UNITED STATES of America, Appellee,

v.

Juan BROOKS, Appellant.

No. 92–3929.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 19, 1993.

Decided Aug. 24, 1993.

---

2. The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas.

Christopher Swiecicki, St. Louis, MO, argued, for appellant.

Howard J. Marcus, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before FAGG, WOLLMAN, and HANSEN, Circuit Judges.

FAGG, Circuit Judge.

Juan Brooks appeals two drug and two firearm convictions. *See* 21 U.S.C. §§ 841(a)(1), 846 (1988) (conspiracy to possess with intent to distribute cocaine); *id.* § 841(a)(1) (possession with intent to distribute cocaine base); 18 U.S.C. § 924(c) (1988) (carrying a firearm while possessing with intent to distribute cocaine base); *id.* § 922(g)(1) (being a felon in possession of a firearm). We affirm.

■■■■ Brooks first contends the district court erroneously found the Government did not deliberately exclude blacks from the jury in violation of the Equal Protection Clause. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). A defendant who raises a *Batson* claim must make a prima facie showing that the prosecutor exercised peremptory challenges on the basis of race. *Hernandez v. New York,* — U.S. —, —, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (plurality). If the defendant makes this showing, the burden shifts to the prosecutor to give a race-neutral explanation for striking the prospective jurors in question. *Id.* A prosecutor's explanation for a strike is considered race neutral if the explanation is facially based on something other than the juror's race, i.e., if discriminatory intent is not inherent in the stated reason. *Id.* After the defendant has a chance to develop a record showing the prosecutor's reason is pretextual, *United States v. Alvara-*

*do–Sandoval,* 997 F.2d 491, 491–93 (8th Cir. 1993), the district court must decide whether the defendant carried the burden of proving purposeful discrimination, *Hernandez,* — U.S. at —, 111 S.Ct. at 1866. We review a district court's rulings on *Batson* claims for clear error. *United States v. Day,* 949 F.2d 973, 979 (8th Cir.1991).

In this case, after the prosecutor used peremptory challenges to exclude three of six black prospective jurors from a jury pool of thirty-four, Brooks and his codefendant asserted a *Batson* claim. Without making a finding that Brooks and his codefendant had established a prima facie case, the district court asked the prosecutor to explain the strikes. The prosecutor responded that prospective juror Price had a relative imprisoned on drug charges, prospective juror Quarells had been beaten by police, and prospective juror Ray supplied "the most sketchy" information on the juror information form. The district court then asked Brooks and his codefendant to respond to the prosecutor's explanations. Brooks only challenged the prosecutor's reason for striking prospective juror Quarells. Specifically, Brooks stated striking prospective jurors who have experienced difficulties with police would have a disproportionate impact on blacks because blacks are more likely to have had such an experience. After Brooks's codefendant offered his challenge, the district court found the prosecutor had good reasons for striking Price and Quarells. The district court stated that the prosecutor's reason for striking Ray was weaker, but the district court found the prosecutor did not violate *Batson* in exercising peremptory challenges against any of the three black prospective jurors.

■■■ The Government initially asserts that Brooks did not make a prima facie showing of discrimination. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination," however, "the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez,* — U.S. at —, 111 S.Ct. at 1866. Even if Brooks did not make a prima facie showing, his convictions must be over-

turned if the Government offered an explanation that is not race neutral or acted with discriminatory intent. *United States v. Uwaezhoke*, 995 F.2d 388, 392 (3d Cir.1993).

█ Here, the prosecutor explained that prospective juror Quarells was stricken because of his experience as a victim of police brutality. This is a race-neutral reason for striking Quarrells, even though the repeated application of the reason might result in the disproportionate removal of black prospective jurors. *See Hernandez*, — U.S. at ——––——, 111 S.Ct. at 1866–67; *Uwaezhoke*, 995 F.2d at 393. Although the district court could consider the reason's disparate impact in deciding whether the prosecutor acted with discriminatory intent, *Hernandez*, — U.S. at ——, 111 S.Ct. at 1867, the district court did not commit clear error in finding the prosecutor had no actual discriminatory intent, *see United States v. Rudas*, 905 F.2d 38, 41 (2d Cir.1990) (prosecutor could infer juror, who had been hit by a policeman with a billy club, would be prejudiced against police and thus not an impartial juror).

█ The prosecutor's reasons for striking potential jurors Price and Ray were also race neutral. Because Brooks did not argue that the race-neutral reasons for striking Price and Ray were pretextual, the district court was not required to consider whether the reasons were pretextual. *Jones v. Jones*, 938 F.2d 838, 844 (8th Cir.1991). The district court could have rejected the prosecutor's race-neutral explanations and found the true motive for the peremptory challenges of Price and Ray was racial, but its failure to do so is not clearly erroneous. *Alvarado–Sandoval*, 997 F.2d at 492.

Brooks next contends the district court should have sustained his motion to suppress a pistol and cocaine base seized at his residence without a warrant. This evidence was the basis for Brooks's two firearm convictions and his possession of cocaine base conviction.

At the suppression hearing, a police officer testified about the circumstances surrounding the warrantless search and seizure. The police were investigating an armed robbery. During the robbery at a gas station, three men with guns had taken a customer's van. The police had Brooks's house under surveillance because the license plates on a Buick Electra in Brooks's driveway belonged on the stolen van, and the stolen van had been found equipped with license plates seen on another vehicle driven by Brooks before the robbery. When someone drove away from Brooks's house in the Electra, the officers followed and stopped the car to ask about the switched license plates. Brooks's wife, the driver, told the officers that the car belonged to her husband, who was at home. The officers returned to Brooks's house and knocked on the door. Brooks stepped out onto the porch and the officers saw a noticeable bulge in the right front pocket of Brooks's pants. When Brooks realized his visitors were police, he stepped back inside his house but did not shut the door. The officers explained that they were investigating an armed robbery and asked if they could come inside and talk to Brooks about it. Brooks told the officers to "come in," and volunteered that if they wanted to know about the stolen van, he had no idea who took it. Given the bulge in Brooks's pocket and the facts suggesting he had been involved in the armed robbery, an officer decided to "pat down" Brooks for weapons for the officers' safety. During the patdown, the officer recognized the outline of a gun and pulled a loaded pistol out of Brooks's pocket. The officers placed Brooks under arrest for unlawful use of a weapon. *See* Mo.Stat.Ann. § 571.030.1(1) (Vernon Supp.1993) (carrying a concealed firearm). An officer testified that he then searched Brooks "incidental to arrest and also for [the officers'] protection," and found cocaine base in Brooks's other pants pocket.

Brooks gave a different version of the events leading up to the seizure of the gun and cocaine base. Brooks testified at the suppression hearing that he did not give police consent to enter his house. According to Brooks, police just came in and started searching. Brooks stated the officers found the gun and cocaine base in the bedroom closet rather than in the pants he was wearing.

■ At the conclusion of the suppression hearing, the district court denied the motion to suppress. We review a district court's denial of a motion to suppress for clear error. *United States v. Williams,* 981 F.2d 1003, 1005 (8th Cir.1992).

■ Brooks contends the warrantless entry of his house by police and the warrantless search and seizure violated the Fourth Amendment. We disagree. Although the "Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects," the prohibition does not apply when voluntary consent has been obtained. *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990); *see United States v. Purham,* 725 F.2d 450, 455 (8th Cir.1984). In denying Brooks's motion to suppress, the district court necessarily adopted the officer's testimony that Brooks freely and voluntarily consented to the request to enter his residence. The officers did not make any demands, display weapons, or use force, but merely asked Brooks whether they could come inside his house to talk with him about the robbery.

■ Following a consensual or otherwise lawful entry into a private dwelling, police can pat a suspect down for weapons if they have a reasonable, particularized suspicion that the suspect is armed. *United States v. Flippin,* 924 F.2d 163, 165–66 (9th Cir.1991); *see Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The police officers in this case suspected Brooks had a gun because of the bulge in his pocket and the facts suggesting he had been involved in the armed robbery. This suspicion was reasonable and particularized. The protective patdown search for weapons was thus reasonable under the Fourth Amendment, and the pistol seized from Brooks during the protective patdown could properly be introduced in evidence against him. *Terry,* 392 U.S. at 30–31, 88 S.Ct. at 1884–85.

■ Because the record does not support a finding that the officer recognized the cocaine base as contraband during a protective patdown search for weapons, we cannot justify the seizure of the cocaine base under the "plain feel" exception to the warrant requirement. *See Minnesota v. Dickerson,* — U.S. —, —, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). Nevertheless, the cocaine base could be reasonably seized in the search incident to Brooks's arrest. A lawful custodial arrest justifies a contemporaneous warrantless search of the arrested person. *New York v. Belton,* 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981). Brooks does not contest the validity of his arrest on appeal, and on the record presented, a finding that the police had probable cause to believe Brooks had carried a concealed firearm outside "his dwelling unit" is not clearly erroneous. *See* Mo.Stat.Ann. § 571.030.3 (Vernon Supp.1993) (excepting a person who is "in his dwelling unit" from the prohibition on carrying a concealed weapon); *Purham,* 725 F.2d at 455 (reviewing probable cause finding for clear error). We thus conclude the district court did not commit clear error in denying Brooks's motion to suppress.

We affirm Brooks's convictions.