# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3392

_____

David Weber,                                    *
                                                *
    Plaintiff/Appellant,                        *
                                                *   Appeal from the United States
v.                                              *   District Court for the
                                                *   District of Minnesota.
Strippit, Inc.; Idex Corp.; James               *
Blackstone                                      *
                                                *
    Defendants/Appellees.                       *

_____

Submitted: June 16, 1999
Filed: July 29, 1999

_____

Before RICHARD S. ARNOLD and ROSS, Circuit Judges, and BYRNE,[1] District
    Judge.

_____

BYRNE, District Judge.


    David Weber appeals from the district court's entry of judgment on a jury verdict
for his former employer on age and perceived disability discrimination claims and from
the district court's grant of defendants' motion for judgment as a matter of law on his
actual disability discrimination claim. We affirm.

---

[1]The Honorable Wm. Matthew Byrne, Jr., Senior United States District Judge
for the Central District of California, sitting by designation.

# I.   BACKGROUND

In May 1990, Weber was hired by defendant Strippit, Inc. as an international sales manager for various Asian markets.  Strippit is engaged in the manufacture of a broad range of tooling and machinery used to punch, bend, and shear sheet metal and employs approximately 400 hourly and salaried employees.  After an initial training period at Strippit's headquarters in Akron, New York, Weber was officed out of his home in Minnesota.

On February 2, 1993, Weber, then 54 years old, suffered a major heart attack. Weber remained in intensive care for about nine days and was placed on physical and work restrictions.  About a month later, Weber was again hospitalized for his heart condition and spent six days in intensive care.  Following his second hospital stay, Weber was placed on strict physical limitations and was advised by his doctor not to work for nearly two months.  On numerous occasions in 1993 and 1994, Weber was hospitalized for his heart disease, hypertension, anxiety, and related conditions.  Weber continued to perform his job responsibilities throughout this period.

Beginning in October 1993, several months after Weber had returned to work following his second hospitalization, defendants required Weber to complete further training and advised him of the possibility that he would be required to relocate to Akron.[2]  In January 1994, Strippit reduced Weber's commissions and informed him that

---

[2]At trial, defendants stated that locating international sales managers in either their sales territory or at Strippit headquarters was an established policy and practice that had been uniformly applied to all of its international sales managers.  Defendants further stated that they began discussing Weber's relocation with him as early as 1992 but that Weber cited a number of reasons, including concern for his wife's health and his desire to have his daughter complete high school in the Minneapolis area, for wanting to remain in Minnesota.

his employment could be terminated at any time. Weber underwent another angioplasty in early 1994. Starting in May 1994, defendants informed Weber that he must relocate to Akron.[3] Defendants eventually ordered Weber to either relocate to Akron or, if he was unwilling to leave Minnesota, to accept a position as a domestic sales engineer at a much lower salary. Weber told defendants that his doctor advised him to remain in Minnesota for six months for medical reasons prior to relocating. Defendants refused to wait the six months and, by the end of October 1994, Weber was either terminated or abandoned his employment.

Prior to trial, the district court dismissed numerous Minnesota tort law claims asserted by Weber. After Weber had presented his case at trial, the district court granted judgment as a matter of law for defendants on Weber's actual disability claim under the Americans with Disabilities Act ("ADA") and Minnesota Human Rights Act ("MHRA") but denied defendants' motion for judgment on Weber's perceived disability and age discrimination claims. At the conclusion of trial, the jury returned a unanimous verdict for defendants. Weber filed a post-trial motion for judgment as a matter of law or, in the alternative, for a new trial, which the district court denied. Weber timely appealed.

## II.  DISCUSSION

On appeal, Weber contends that defendants violated the equal protection clause when they exercised their peremptory challenges to remove jurors over the age of fifty. Weber also asserts that the district court erred in granting judgment as a matter of law on his actual disability claim and in charging the jury.

A.    *Peremptory challenges*

---

[3]Weber continued to make frequent trips to Akron and to Asia throughout 1994.

During jury selection, defendants exercised all three of their peremptory challenges to remove jurors over the age of fifty. At that time, and again as part of his motion for a new trial, Weber alleged that defendants violated his right to a representative jury through this use of their peremptory challenges. The district court rejected Weber's claim, finding it unlikely that the Supreme Court would expand Batson v. Kentucky, 476 U.S. 79 (1986), to prohibit peremptory challenges based on age and that, even if Batson did apply to age, defendants had sufficient age-neutral reasons for striking the three jurors.

In Batson, the Supreme Court held that the equal protection clause forbids prosecutors from striking jurors solely on account of their race. Batson, 476 U.S. at 93-94. The Court subsequently extended Batson to counsel participating in jury selection in civil cases, see Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 628 (1991), and to peremptory challenges based on gender, see J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 141-42 (1994). Where Batson applies, the party asserting an equal protection violation must make a prima facie showing that the other party exercised a peremptory challenge on the basis of race or gender; the burden then shifts to the challenging party to offer a non-pretextual race or gender-neutral explanation for their strikes. See Davidson v. Harris, 30 F.3d 963, 965 (8th Cir. 1994); United States v. Brooks, 2 F.3d 838, 840-41 (8th Cir. 1993).

Neither the Supreme Court nor any other court has extended Batson to peremptory challenges based on age. Several circuits, in fact, have expressly considered and rejected the claim that Batson applies to age-based challenges, and other circuits have accepted age as a legitimate race or gender-neutral factor for exercising peremptory challenges. See, e.g., United States v. Maxwell, 160 F.3d 1071, 1075-76 (6th Cir. 1998); Howard v. Moore, 131 F.3d 399, 408 (4th Cir. 1997); United States v. Cresta, 825 F.2d 538, 544-45 (1st Cir. 1987); see also Barker v. Yukins, 993 F. Supp. 592, 605 n.12 (E.D. Mich. 1998); State v. Everett, 472 N.W.2d 864, 869 (Minn. 1991).

-4-

We decline to extend Batson to peremptory challenges based on age. As the Sixth Circuit noted in Maxwell, "[t]he practice of allowing peremptory challenges may be overridden only for the strongest constitutional reasons." Id. at 1076. Age, unlike race or gender, is not a suspect classification subject to strict or even heightened scrutiny under the equal protection clause. See, e.g., Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 313-14 (1976); Humenansky v. Regents of the Univ. of Minn., 152 F.3d 822, 827 (8th Cir. 1998), petition for cert. filed, 67 USLW 3504 (U.S. Feb. 1, 1999). Thus, an age-based motivation for exercising peremptory challenges does not violate equal protection.

Even if Batson were extended to age-based peremptory challenges, the district court assessed the age-neutral reasons for defendants' exercise of their peremptory challenges and found them non-pretextual. Defendants had requested, for instance, that one of the three jurors be excluded because her brother-in-law had made claims of age discrimination against a former employer; when the court declined to strike the juror for cause, defendants exercised a peremptory challenge to exclude the juror. The district court further found that all three jurors' answers during voir dire could support defense counsel's view that the jurors were predisposed to rule against defendants. Because the district court's findings on discriminatory purpose were not clearly erroneous, see United States v. Wiggins, 104 F.3d 174, 176 (8th Cir. 1997), even a cognizable Batson claim would fail.

B. *Actual disability claim*

Weber's primary contention on appeal is that the district court erred in granting judgment as a matter of law for defendants on his actual disability claim under the ADA and MHRA. Specifically, Weber contends that his heart disease automatically qualifies as a disability under the ADA and, even if it does not, that he presented sufficient evidence that his heart disease substantially interfered with one or more major life

activities.

We review the district court's grant of a motion for judgment as a matter of law de novo. See Schulz v. Long, 44 F.3d 643, 647 (8th Cir. 1995). Judgment as a matter of law is appropriate if there is insufficient evidence to support a verdict for the non-moving party. See Gray v. Bicknell, 86 F.3d 1472, 1478 (8th Cir. 1996). The evidence is insufficient if no reasonable juror could have returned a verdict for the non-moving party. Morse v. Southern Union Co., 174 F.3d 917, 922 (8th Cir. 1999). In making this determination, we view all facts and resolve all conflicts in favor of the non-moving party, giving him the benefit of all reasonable inferences. See Varner v. National Super Markets, Inc., 94 F.3d 1209, 1212 (8th Cir. 1996).

The ADA proscribes discrimination by an employer "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). The MHRA similarly creates a civil cause of action against employers who discharge an employee because of a disability. Minn. Stat. § 363.03 subd. 1(2)(b); see Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1205 (8th Cir. 1997). We have previously assumed, without deciding, that analysis of a disability claim under the MHRA mirrors analysis under the ADA. See Roberts v. KinderCare Learning Ctrs., Inc., 86 F.3d 844, 846 n.2 (8th Cir. 1996). Because neither of the parties in this case draws any distinction between the analysis under the two statutes, we proceed on the same assumption.

To obtain relief under the ADA, a plaintiff must prove that he was disabled within the meaning of the ADA, that with or without reasonable accommodation he was able to perform the essential functions of his job, and that the employer discharged him in whole or in part because of his disability. See, e.g., Katz v. City Metal Co., Inc., 87 F.3d 26, 30 (1st Cir. 1996). The threshold issue is whether plaintiff had a "disability," which the ADA defines as:

(A)    a physical or mental impairment that substantially limits one or more of the major life activities of such individual;[4]

(B)    a record of such an impairment; or

(C)    being regarded as having such an impairment.

42 U.S.C. § 12102(2). An "impairment" is any physiological disorder, cosmetic disfigurement, or anatomical loss affecting one of the body's systems, or any mental disorder. 29 C.F.R. § 1630.2(h).

Guidance as to the meaning of "substantially limits one or more major life activities" is found in the regulations promulgated under the ADA. "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Sitting, standing, lifting, and reaching are also considered major life activities. See Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997); see also Bragdon v. Abbott, 118 S. Ct. 2196, 2205 (1998) (emphasizing that the regulations provide an illustrative, rather than exhaustive, list of major life activities).

"Substantially limited" is defined as:

(i)     Unable to perform a major life activity that the average person in the general population can perform; or

(ii)    Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform

---

[4]The MHRA defines a disability as an impairment that "materially," rather than "substantially," limits one or more major activities. Minn. Stat. § 363.01 subd. 13. The difference is merely semantic, however, and we treat the standards the same. See Snow, 128 F.3d at 1206.

the same major life activity.

29 C.F.R. § 1630.2(j)(1). Factors to be considered in assessing whether an individual is substantially limited in a major life activity are:

(i)     The nature and severity of the impairment;
(ii)    The duration or expected duration of the impairment;
(iii)   The permanent or long term impact, or the expected long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). The Supreme Court has recently held that the determination of whether an individual is substantially limited in a major life activity must take into account mitigating measures such as medicines and assistive devices, thus overruling our holding to the contrary in Doane v. City of Omaha, 115 F.3d 624 (8th Cir. 1997). See Sutton v. United Air Lines, Inc., __ U.S. __, 1999 WL 407488, at *7-8 (June 22, 1999).

At the close of Weber's case, defendants moved for judgment as a matter of law on Weber's disability and age discrimination claims. With respect to Weber's claim of actual disability, defendants conceded that Weber's heart disease constituted an impairment under the ADA. Defendants argued, however, that Weber had not shown the impairment to substantially limit any major life activity. Defendants focused, in particular, on the major life activity of working. Defendants noted that Weber claimed only to be unable to relocate to a particular location and not to be restricted from working in an entire class or broad range of jobs. The district court granted defendants' motion for judgment as a matter of law on the actual disability claim.

On appeal, Weber asserts the curious claim that "[h]aving a fully functioning cardiovascular system is a major life activity," such that his heart disease qualifies per se as an actual disability under the ADA. This claim stems from his confusion among the terms "impairment," "major life activity," and "disability" as used in the ADA and

related case law. All of the cases that Weber cites for the proposition that a fully functioning cardiovascular system is a major life activity state only that the absence of a fully functioning cardiovascular system (e.g., heart disease) is an <u>impairment</u> that, if it substantially limits <u>a major life activity</u>, may constitute a <u>disability</u>. That Weber's heart disease substantially impacts his cardiovascular system does not automatically render him disabled under the ADA.

The district court found, and Weber concedes, that Weber's impairment did not substantially limit the major life activity of working. However, Weber claims that the district court should have considered major life activities other than working and that, based on the testimony of Weber and his physician, a reasonable jury could have found that he was substantially limited in one or more major life activities. While Weber's physician offered his opinion that Weber was substantially limited in one or more major life activities, he repeatedly failed to identify any particular activity in which Weber was restricted as to condition, manner, or duration as compared to the average person in the general population. Weber did identify specific activities that were impacted by his heart disease, including eating, walking up stairs, shoveling snow, gardening, mowing the lawn, playing tennis, fishing, and hiking. Aside from eating and walking, however, none of these activities qualify as major life activities.

While Weber did face dietary restrictions and difficulty walking long distances or climbing stairs without getting fatigued, these moderate limitations on major life activities do not suffice to constitute a "disability" under the ADA. <u>See, e.g.</u>, <u>Land v. Baptist Medical Ctr.</u>, 164 F.3d 423, 425 (8th Cir. 1999) (holding that an individual is not actually disabled where, despite a severe allergic reaction to foods containing peanuts or peanut by-products, she can consume other foods and her physical ability to eat is not in any way restricted); <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 106-08 (3d Cir. 1996) (affirming summary judgment for defendants on actual disability claim where impairment prevented plaintiff from walking more than a mile or so, altogether prevented him from jogging, and required him to pace himself on stairs). Moreover,

even Weber's physician testified that Weber could engage in most forms of exercise, even strenuous exercise, despite his heart condition.

Because Weber "failed to present sufficient evidence to establish that the nature, duration, and long-term impact of his medical problems caused him to be substantially limited in a major life activity," Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir. 1996), the district court did not err in granting judgment as a matter of law.

C.    *Jury charge*

Weber next claims that the district court erred in charging the jury by giving a flawed instruction on perceived disability and failing to give instructions on "record of disability," "reasonable accommodations," the McDonnell-Douglas burden-shifting framework, and mixed motives.

1.    Perceived disability

A person may be disabled under the ADA if, notwithstanding the absence of an actual disability, he is perceived or "regarded as" having an impairment that substantially limits a major life activity. See Sutton, 1999 WL 407488, at *12. Weber claims that the district court's instruction on perceived disability was flawed in that it emphasized the major life activity of "working" and was more akin to an actual disability instruction than a perceived disability instruction.

The references in the district court's instruction to the major life activity of working were not improper. Although Weber did not claim that his heart condition in fact limited his ability to work, he did claim (and continues to claim) that defendants treated him as if it did. Because the jury was at least implicitly invited to find that defendants treated Weber as if he was unable to work, and because the regulations set

forth specific requirements that must be met before a limit on an individual's ability to work may be deemed "substantial," it was important for the court to instruct the jury on these requirements. See 29 C.F.R. § 1630.2(j)(3); see also Sutton, 1999 WL 407488, at *14 ("When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege that they are unable to work in a broad range of jobs.").[5]

Additionally, the district court did not limit its instruction to the major life activity of working. Rather, the court instructed the jury that it should find Weber disabled if defendants regarded his impairment as substantially limiting any major life activity, "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sitting, standing, lifting, reaching, or working." Thus, "the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Morse, 174 F.3d at 926.

Weber's claim that the court's instruction was more akin to an actual disability instruction than a perceived disability instruction also fails. Weber contends that the test for perceived disability is whether defendant treated plaintiff adversely because of his or her feelings about the plaintiff's physical or mental impairment. This is not the test. Rather, the test is whether defendant treated plaintiff adversely because it regarded him as having an impairment that substantially limits one or more major life activities. See Murphy v. United Parcel Serv., __ U.S. __, 1999 WL 407472, at *4 (June 22, 1999); Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir. 1995); see also O'Keefe v. Varian Assocs., Inc., 1998 WL 417498, at *18 (N.D. Ill. 1998) ("For an employee to be disabled under this definition, it is not sufficient that an employer

_____

[5] While the Supreme Court has noted "some conceptual difficulty in defining 'major life activities' to include work," Sutton, 1999 WL 407488, at *14, the parties in this case accept that the term "major life activities" includes working.

perceive an employee as having an impairment; the employer must regard the employee as having an impairment that substantially limits a major life activity.").

The court's instruction to the jury -- that "it is your duty to determine whether defendants regarded plaintiff as having a physical impairment that substantially or materially limits a major activity . . . [n]ot whether plaintiff actually has such an impairment" -- thus stated the proper test for a perceived disability claim.

2.    Record of disability

Weber next claims that the district court erred in failing to give a "record of disability" instruction based upon his hospitalizations during his employment at Strippit. The ADA does proscribe discrimination based upon a documented history of having a physical or mental impairment that substantially limits one or more of the major life activities. However, regardless of whether the evidence in this case would have supported a record of disability instruction, Weber never requested the instruction below. Thus, our review is for plain error. See Morse, 174 F.3d at 926.

In order to have a record of disability under the ADA, a plaintiff's medical documentation must show that he has a history of, or has been misclassified as having, a physical or mental impairment that substantially limits one or more major life activities. 29 C.F.R. § 1630.2(k). Because Weber failed to establish any actual disability during his employment at Strippit, and the jury unanimously rejected his perceived disability claim, it is virtually inconceivable that the jury would have found for Weber on a record of disability theory. Thus, any error in failing to instruct the jury on record of disability is not the type of plain error that would result in a miscarriage of justice if left uncorrected.

3.    Reasonable accommodations

-12-

Weber also contends that the district court erred in failing to give a "reasonable accommodation" instruction. Weber takes the position that an employer is liable under the ADA where it fails to reasonably accommodate either an actual or a perceived disability. The district court rejected Weber's position, holding that an employer need only accommodate actual disabilities and, because the court granted judgment as a matter of law on Weber's actual disability claim, no reasonable accommodation instruction was required. We agree with the district court.

The first element of a prima facie case of disability discrimination required Weber to demonstrate that he was "disabled" within the meaning of the ADA. The second element, which is the focus of the present analysis, required him to demonstrate that he was a "qualified individual," which the ADA defines as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). This inquiry has two prongs. "First, a court must determine whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires." Deane v. Pocono Med. Ctr., 142 F.3d 138, 145 (3d Cir. 1998) (en banc) (citing 29 C.F.R. pt. 163, app. § 1630.2(m)). "Second, it must determine whether the individual, with or without reasonable accommodation, can perform the essential functions of the position held or sought." Id. (emphasis added); see also Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1111-12 (8th Cir. 1995).

The reasonable accommodation requirement is easily applied in a case of an actual disability. Where an employee suffers from an actual disability (i.e., an impairment that substantially limits a major life activity), the employer cannot terminate the employee on account of the disability without first making reasonable accommodations that would enable the employee to continue performing the essential functions of his job. Thus, it is enough to make out a prima facie case of disability

-13-

discrimination that an individual is actually disabled, that he can perform the essential functions of his job with or without reasonable accommodations, and that his employer discriminated against him on account of his disability. This application of the reasonable accommodation requirement is perfectly consistent with the ADA's goal of protecting individuals with disabling impairments who nonetheless can, with reasonable efforts on the part of their employers, perform the essential functions of their jobs.

The reasonable accommodation requirement makes considerably less sense in the perceived disability context. Imposing liability on employers who fail to accommodate non-disabled employees who are simply regarded as disabled would lead to bizarre results. Assume, for instance, that Weber's heart condition prevented him from relocating to Akron but did not substantially limit any major life activity. Absent a perceived disability, defendants could terminate Weber without exposing themselves to liability under the ADA. If the hypothetical is altered, however, such that defendants mistakenly perceive Weber's heart condition as substantially limiting one or more major life activities, defendants would be required to reasonably accommodate Weber's condition by, for instance, delaying his relocation to Akron. Although Weber's impairment is no more severe in this example than in the first, Weber would now be entitled to accommodations for a non-disabling impairment that no similarly situated employees would enjoy.

No court has squarely addressed whether employers must reasonably accommodate perceived disabilities, and the two circuits that have indirectly considered the issue have suggested different outcomes. In <u>Katz v. City Metal Co.</u>, <u>supra</u>, plaintiff sought an accommodation from his employer in the form of a reduced work schedule after suffering a heart attack. 87 F.3d at 29. The employer denied plaintiff's request for an accommodation and terminated his employment. <u>Id.</u> Plaintiff sued under the ADA and, at the end of his case, the court granted the employer's motion for judgment as a matter of law, holding that the plaintiff had failed to show that he was disabled. <u>Id.</u> The First Circuit reversed, finding sufficient

-14-

evidence for the plaintiff to reach the jury under a perceived disability theory and concluding that whether plaintiff would have been able to perform his job if his employer had granted his request for an accommodation was an issue for the jury to decide. Id. at 32-33.

The Third Circuit faced a similar situation in Deane, supra. Plaintiff was working as a nurse when she tore the cartilage in her wrist and missed nearly a year of work. 142 F.3d at 141. Plaintiff's doctor eventually released her to return to "light duty" work but limited her lifting to 15-20 pounds or less. Id. Defendants determined that plaintiff could not be accommodated in any position available and terminated her. Id. Plaintiff focused her case on her employer's perception that she was disabled and argued that she was entitled to reasonable accommodations either in her previous position or another position, so long as no heavy lifting would be required. Id. at 142. The district court entered summary judgment for defendants. Id.

On appeal, a divided panel of the Third Circuit held that: (1) in order to be considered qualified under the ADA, a "regarded as" plaintiff must show that she is able to perform all the functions of the relevant position; and (2) a "regarded as" plaintiff is not statutorily entitled to accommodation from her employer. Id. at 140-41. The Third Circuit granted rehearing en banc and reversed the panel, holding that a plaintiff is qualified under the ADA so long as she is able to perform the essential functions of the relevant position. Because this holding alone required remand, the court did not reach "the more difficult question . . . whether 'regarded as' disabled plaintiffs must be accommodated by their employers if they cannot perform the essential functions of their jobs." Id. at 148-49 n.12.

The Third Circuit nonetheless discussed this issue in some detail and acknowledged that there is "considerable force" to the argument that "regarded as" disabled plaintiffs are not entitled to accommodations. Id. Among the court's concerns were that adopting plaintiff's interpretation of the ADA would: "(1) permit healthy

-15-

employees to, through litigation (or the threat of litigation) demand changes in their work environments under the guise of 'reasonable accommodations' for disabilities based upon misperceptions; and (2) create a windfall for legitimate 'regarded as' disabled employees who, after disabusing their employers of their misperceptions, would nonetheless be entitled to accommodations that their similarly situated co-workers are not, for admittedly non-disabling conditions." Id.; see also Taylor v. Pathmark Stores, Inc., __ F.3d __, 1999 WL 312384, at *15 (3d Cir. May 19, 1999) ("[I]t seems odd to give an impaired but not disabled person a windfall because of her employer's erroneous perception of disability, when other impaired but not disabled people are not entitled to an accommodation.").

The ADA cannot reasonably have been intended to create a disparity in treatment among impaired but non-disabled employees, denying most the right to reasonable accommodations but granting to others, because of their employers' misperceptions, a right to reasonable accommodations no more limited than those afforded actually disabled employees. Accordingly, we hold that "regarded as" disabled plaintiffs are not entitled to reasonable accommodations and that the district court did not err in failing to give a reasonable accommodation instruction.

4.    Burden-shifting and mixed motive

Weber's final claims of instructional error are that the district court should have instructed the jury on the burden-shifting framework set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and should have given a mixed motive instruction. Although Weber lists these alleged errors in his opening brief, he fails to discuss either until his reply brief. Accordingly, these claims have been waived. See United States v. Brown, 108 F.3d 863, 867 (8th Cir. 1997).

In any event, these claims fail on the merits. We have previously rejected the claim that a district court should instruct the jury on the McDonnell-Douglas burden-

-16-

shifting framework.  See  Lang v. Star Herald, 107 F.3d 1308, 1312 (8th Cir. 1997) ("Reference to [the McDonnell-Douglas burden-shifting] analysis is not necessary . . . or even recommended. The burden-shifting analysis is simply a procedural framework that progressively focuses the inquiry on the question of whether a material issue of discrimination in fact exists.") (citations omitted).  And the district court did instruct the jury that defendants should be found liable if Weber's alleged disability was "a motivating factor" behind their actions.  A more specific mixed-motive instruction was not required.

## IV.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court judgment in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-17-