323 F.Supp.2d 974 (2004)
Thomas MORAN, Plaintiff,
v.
Anne Marie CLARKE, et al. Defendants.
No. 4:98-CV-556.
United States District Court, E.D. Missouri, Eastern Division.
July 6, 2004.
*975 *976 *977 Stanley E. Goldstein, Liberman and Goldstein, Clayton, MO, Eli Karsh, Lackenbach and Siegel, Scarsdale, NY, Mark H. Neill, John C. Pleban, Pleban and Associates, LLC, St. Louis, MO, for Plaintiff.
Priscilla F. Gunn, Rabbitt and Pitzer, Joy Urbom Taylor, Greensfelder and Hemker, St. Louis, MO, Erin M. Matis, Gallop and Johnson, Clayton, MO, for Defendants.

MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR NEW TRIAL
PRATT, District Judge.
At the conclusion of a five day jury trial in the present case, the jury returned verdicts for Defendants on all of Plaintiff's claims. Presently before the Court is Plaintiff's Motion for New Trial which presents the Court with five bases for which Plaintiff contends he is entitled to a new trial pursuant to Federal Rule of Civil Procedure 59. For the reasons explained below, the motion is denied.

I. Legal standard for new trial
Federal Rule of Civil Procedure 59(a) states in pertinent part, "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." A motion for a new trial is addressed to the sound judicial discretion of the trial court. "No fixed standard applies to the grant or denial of Rule 59 relief." 12 James Wm. Moore's Et Al, Moore's *978 Federal Practice § 59.13[1], at 59-43 (3d. ed.1998). "[A]uthority to grant a new trial, moreover, is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). The key question is whether a new trial should be granted to avoid a miscarriage of justice. See Beckman v. Mayo Found., 804 F.2d 435, 439 (8th Cir.1986).

II. Whether juror number four should have been struck for cause
Plaintiff contends that Juror Four, Mr. Tommy Greene, should have been struck for cause from the venire pool because of his inability to be impartial. During voir dire Mr. Greene said he remembered both the Gregory Bell incident and the resultant media coverage. Upon questioning from Defendants' counsel, Mr. Greene admitted it would be "difficult" to suppress those memories and emotions he felt at the time of the incident, but ultimately stated that he could set aside his feelings and return a verdict based solely on the evidence in the case.
The Court possesses broad discretion in determining juror qualifications "because it is in the best position to assess the demeanor and credibility of the prospective jurors." United States v. Elliott, 89 F.3d 1360, 1365 (8th Cir.1996). For a party to strike a venire member for cause, that party must show "actual partiality" based on the circumstances of the case. Walzer v. St. Joseph State Hosp., 231 F.3d 1108, 1112 (8th Cir.2000) (citing United States v. Tucker, 137 F.3d 1016, 1029 (8th Cir.1998)). Potential jurors maintain a presumption of impartiality so long as "the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." United States v. Wright, 340 F.3d 724, 733 (8th Cir.2003) (quoting United States v. Evans, 272 F.3d 1069, 1078 (8th Cir.2001)). The test for evaluating impartiality is "whether the prospective juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Id. (quoting United States v. Johnson, 906 F.2d 1285, 1288 (8th Cir.1990)). In the present case, Plaintiff has the "burden of showing that the jury which actually heard the evidence was not impartial." Wright, 340 F.3d at 734.
In the present case, Plaintiff's sole basis for challenging Mr. Greene's impartiality stems from questioning by Defendants' counsel during voir dire. Although Mr. Greene stated that he had strong feelings and emotions about the Bell incident when it occurred, Mr. Greene ultimately stated that he could set aside his feelings and return a verdict based solely on the evidence in the case. At no point did Mr. Greene say that he was angry or that he harbored any negative emotions toward Plaintiff or anyone else in particular; he stated only that he felt anger about the incident. Given the horrific details of the incident and the effect it had on the city of St. Louis, that members of the community had strong feelings and emotions regarding the incident is both understandable and expected. Without more, Plaintiff has failed to meet his burden of proving impartiality. Plaintiff's motion for new trial is, therefore, denied as to paragraph one. See Wright, 340 F.3d at 734-735 (affirming district court's refusal to strike juror for cause in kidnaping case where juror expressed initial doubt over her ability to follow the court's instructions before eventually stating that she could decide the case fairly and impartially).

III. Whether the Court improperly overruled Plaintiff's peremptory challenges
Plaintiff next contends that the Court improperly overruled his peremptory *979 challenges exercised against Juror No. 4 (Mr. Greene), Juror No. 6 (Mr. Willie Jones) and Juror No. 11 (Mr. Phillip Tate). After Plaintiff attempted to use his four peremptory challenges to strike the only four African-American venire persons on the prospective jury panel, Defendants protested, citing Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Court sustained Plaintiff's challenge as to one prospective juror and agreed with Defendants in overruling the other three challenges.

A. Legal Standard for Batson Challenge
Use of race discrimination in the exercise of peremptory challenges to exclude venire members violates a criminal defendant's Fourteenth Amendment equal protection rights. Batson v. Kentucky, 476 U.S. 79, 84, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (citing Swain v. Alabama, 380 U.S. 202, 203-04, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)). In Edmonson v. Leesville Concrete Co., 500 U.S. 614, 630, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the United States Supreme Court extended the same principle to private litigants in civil cases. Additionally, the Court in Edmonson held that a litigant may raise the equal protection rights of the excluded venire member on his or her behalf. Id. at 628-29, 111 S.Ct. 2077.
A litigant "may not justify peremptory challenges to venire members of one race unless venire members of another race with comparable or similar characteristics are also challenged." Elmahdi v. Marriott Hotel Servs., Inc., 339 F.3d 645, 651 (8th Cir.2003) (quoting Reynolds v. Benefield, 931 F.2d 506, 512 (8th Cir.1991)). The Eighth Circuit Court of Appeals employs a three-part analysis when considering the merits of an objection to a party's preliminary strike under Batson. United States v. Brooks, 2 F.3d 838, 840 (8th Cir.1993) (citing Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). See also Batson, 476 U.S. at 96-98, 106 S.Ct. 1712. Each of the three steps "involves a factual determination entitled to a presumption of correctness unless overcome by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 713 (8th Cir.2003) (citing Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir.2001)).
A party raising a Batson objection must first make a prima facie showing that the opposing party "exercised peremptory challenges on the basis of race." Brooks, 2 F.3d at 840 (citing Hernandez, 500 U.S. at 358, 111 S.Ct. 1859). During this first step, the district court's determinations are awarded great deference upon review because the "prima facie step is highly fact-intensive." Weaver, 241 F.3d at 1030.
If the challenging party is successful at step one, the burden shifts to the opposing party to provide "a race-neutral explanation for striking the prospective jurors in question." Brooks, 2 F.3d at 840 (citing Hernandez, 500 U.S. at 358-59, 111 S.Ct. 1859). A strike is "race-neutral" if "the explanation is facially based on something other than the juror's race, i.e., if discriminatory intent is not inherent in the stated reason." Id. The opposing party may meet its burden by providing the Court with an explanation that does not have to be "persuasive, or even plausible." U.S. Xpress Enters. v. J.B. Hunt Transp., Inc., 320 F.3d 809, 813 (8th Cir.2003) (quoting Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). At this point, only "the facial validity of the explanation" is relevant and necessary. Id. Reasons given for a strike may appear "unconvincing," but nonetheless "implausible reasons may be legitimate, and, therefore, as long as the reason is facially neutral, `it must be deemed sufficient *980 at this second stage, even if it bears no relation whatsoever to the case to be tried or the person's ability to serve as a juror.'" Id. (quoting Elem v. Purkett, 64 F.3d 1195, 1198 (8th Cir.1995)). A proffered explanation for a strike will satisfy the second step of the Batson analysis even if it is "fantastic" or even "silly or superstitious," so long as the reason given is facially race-neutral. Elem, 64 F.3d at 1198 (quoting Purkett, 514 U.S. at 768, 115 S.Ct. 1769).
If the opposing party provides a race-neutral explanation for the strike, the Court must determine "whether the defendant carried the burden of proving purposeful discrimination." Brooks, 2 F.3d at 840 (citing Hernandez, 500 U.S. at 359, 111 S.Ct. 1859). The Court's ultimate decision may hinge on whether the Court finds the reason for striking offered in step two race-neutral and not pretextual. Jackson v. City of Little Rock, 26 F.3d 88, 90 (8th Cir.1994). The Court may also consider both the "truthfulness and neutral character" of the explanation offered by the party exercising the peremptory strike and whether the party legitimately believed the stricken members may not be "fair and impartial jurors." Doss v. Frontenac, 14 F.3d 1313, 1317 (8th Cir.1994). Additionally, the Supreme Court has stated that during this third step "a trial judge's findings ... will turn on evaluation of credibility." Batson, 476 U.S. at 98 n. 21, 106 S.Ct. 1712 (citing Anderson v. City of Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

B. Discussion
That race played an enormous role in this case is undeniable. See Moran v. Clarke, 213 F.Supp.2d 1067, 1074-1076 (E.D.Mo.2002). As Judge Shaw noted before recusing himself, "[t]his case starts with race, becomes embroiled with race and climaxes with race." Id. at 1074. To recap, Plaintiff is white. The relevant incident involved the beating of Gregory Bell, a mentally-disabled African-American teenager. And Plaintiff's substantive due process and conspiracy claims argued that Defendants, several of whom are themselves African-American, conspired to manufacture evidence and prosecute Plaintiff as a scapegoat for the Bell incident because of his race. Thus, when Defendants challenged Plaintiff's peremptory strikes of the only four African-Americans in the venire panel, the Court found that Defendants had established a prima facie case showing that Plaintiff exercised his peremptory challenges on the basis of race.
Upon finding that Defendants had established a prima facie case of racial discrimination, the burden shifted to Plaintiff to provide a race-neutral explanation for striking the prospective jurors in question. Regarding Juror No. 4, Mr. Greene, Plaintiff again cited Mr. Greene's emotions regarding the case. Plaintiff argued that Juror No. 6, Mr. Willie Jones, was struck because of his inability to recall details of his prior jury service and because he did not remember the publicity originally surrounding the Bell incident. Plaintiff contends that Juror No. 11, Mr. Phillip Tate, was struck because he was unemployed and because Plaintiff perceived Mr. Tate to be hostile to the Court and to counsel for both parties. As the proffered explanations need only to be race neutral rather than persuasive, or even plausible, the Court found that Plaintiff met his burden and the Court continued to the third step of the Batson analysis.
As Plaintiff provided race neutral explanations for the strikes, the Court was left to determine whether Defendants carried the burden of proving purposeful discrimination. As noted above, the Court's consideration of the issue may hinge on *981 whether the Court believes the reasons for striking offered by the opposing party in step two were race-neutral and not pretextual. Here, the Court does not believe Plaintiff's motives for striking these three jurors were race-neutral. Mr. Greene was hardly the only member of the venire panel who recalled the Bell incident, yet he was the only venire person Plaintiff chose to strike because of his memory. Plaintiff's justification for striking Mr. Greene because he recalled the incident rings particularly hollow considering Plaintiff justifies his attempted strike of Mr. Jones by noting that Mr. Jones had no knowledge of the incident. Whether Plaintiff was seeking jurors who were aware of or ignorant to the incident is irrelevant; that Plaintiff simultaneously offers both reasons as justification for striking Jurors No. 4 and 6, however, significantly undercuts Plaintiff's contention that his motives were race neutral. Similarly, Plaintiff offered nothing to support his contention that Mr. Tate was struck because of a perceived hostility or unemployment. As such, the Court found that Defendants had carried their burden of proving racial discrimination, and the Court sustained Defendants' objections. The Court has no reason to doubt its conclusion and Plaintiff is not entitled to a new trial based on the Batson challenges to his peremptory strikes.

IV. Employment concerns
Plaintiff next contends that he is entitled to a new trial because the Court failed to inform Juror No. 4, Mr. Greene, that his employer had work related concerns about his ability to sit on the jury. Plaintiff's argument is moot as the Court met with Mr. Greene after the Court had recessed on the day in question to explain the situation. With Mr. Greene's consent, the Court contacted Mr. Greene's employer to explain the situation, and the matter was resolved without further incident.

V. Polling the jury and trial publicity
Plaintiff next takes issue with the Court's decision not to poll the jury regarding a newspaper article published during the three day weekend after the jury began deliberations. The article, which appeared in the St. Louis Post-Dispatch on Saturday, April 17, 2004, included quotes from former St. Louis Circuit Attorney Dee Joyce-Hayes regarding a leak of information from her office to Plaintiff's attorney and the media during Moran's criminal prosecution. See Peter Shinkle, Ex-Prosecutor Tells of Firing Over Leaks, ST. LOUIS POST-DISP., Apr. 17, 2004, at 9. Before jury deliberations re-commenced on Tuesday morning April 20, 2004, Plaintiff presented the article to the Court and asked the Court to poll the jury about its knowledge of the article. The Court denied Plaintiff's request and overruled Plaintiff's subsequent motion for mistrial. Plaintiff now asks the Court to grant him a new trial based on the same article. The Court declines Plaintiff's invitation.
Included in the Court's preliminary instructions to the jury was 8th Circuit Model Jury Instruction 1.05, which contains the admonition, "do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it." Without evidence to the contrary, the Court presumes "that jurors will follow court admonitions to avoid media coverage regarding a case upon which they are sitting." Tunstall v. Hopkins, 306 F.3d 601, 609 (8th Cir.2002) (citing Jones v. United States, 527 U.S. 373, 394, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999)).
Plaintiff produced no evidence to suggest even a semblance of prejudice from the jury. Rather, Plaintiff relies solely on the text of the article and the public nature of the case in general to presume and *982 project prejudice on the jurors. The Court is unwilling to accept such a presumption. Absent some showing that the jury saw or was even aware of the newspaper article, the Court has no duty to conduct an inquiry into the matter. See King v. Bowersox, 291 F.3d 539, 541 (8th Cir.2002). Plaintiff's motion is, therefore, denied as to paragraph IV.

VI. Jury Instructions
Lastly, Plaintiff argues that the Court erred in instructing the jury on Plaintiff's 42 U.S.C. § 1983 claim. In his brief, Plaintiff first admonishes the Court over the text of an instruction that was not given based on Plaintiff's objections. As for the instruction the Court read to the jury, Plaintiff argues the Court's instruction misstated the law of the case as provided by the Eighth Circuit.
The Court retains broad discretion over the content of jury instructions, and "[a] judgment will be reversed on the basis of an instructional error only if the error affected the substantive rights of the parties." Gasper v. Wal-Mart Stores, Inc., 270 F.3d 1196, 1200 (8th Cir.2001). "The test is whether the instructions given, taken as a whole and viewed in the light of the evidence and the applicable law, fairly and adequately submitted the issues in the case to the jury." Id. (quotations and citation omitted).
As read to the jury, Instruction No. 18 states in relevant part:
Your verdict must be for Plaintiff Thomas Moran on his Constitutional claim against the individual Defendants if each of the following elements have been proved by the greater weight of the evidence against any one Defendant:
Defendant(s) had insufficient information upon which a reasonable person could believe that Plaintiff Thomas Moran had committed a criminal or administrative offense in connection with the Gregory Bell incident;
Defendant(s) knowingly solicited or authorized the solicitation of false information to implicate Plaintiff Thomas Moran of criminally or administratively improper conduct in connection with the Gregory Bell incident;
Defendant(s) did so for the purpose of wrongfully seeking criminal or administrative charges against Plaintiff Thomas Moran to scapegoat Plaintiff for the Gregory Bell beating incident;
AND as a direct result of this conduct, Plaintiff Thomas Moran was damaged.
Plaintiff contends that the Court's instruction required Plaintiff to prove far more than required by the Eighth Circuit. The Court disagrees. In remanding this case for trial, the Eighth Circuit reasoned:
[W]e are prompted to weigh Moran's constitutionally important liberty interests against evidence that officials purposely conspired to manufacture evidence in order to make him an innocent scapegoat for a devastating travesty that embarrassed the police department and its managers, and evidence that the executive actions may have been partially undertaken to protect other, more favored, employees in the department.
Moran, 296 F.3d at 647. The Court of Appeals makes clear that Plaintiff's § 1983 claim involves the question of whether officials conspired to manufacture evidence against Moran to make him an innocent scapegoat for the Bell incident. The Court's instruction accurately reflects the circuit's conclusions as the instruction asks the jury to determine whether Defendants did in fact manufacture or authorize the manufacture of false evidence against Plaintiff to set him up as an innocent scapegoat when there was insufficient evidence to conclude that he had done anything wrong. As such, the Court finds *983 that Plaintiff has failed to show that the Court's instruction affected his substantive rights, and Plaintiff's motion is overruled as to paragraph V.

VII. ORDER
Plaintiff's motion for a new trial is hereby overruled.
IT IS SO ORDERED.