# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2586

_____

Todd D. Schuler,

        Appellant,

v.

SuperValu, Inc., a foreign corporation,

        Appellee.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the District
\*  of Minnesota.
\*
\*
\*

_____

Submitted:  May 12, 2003

Filed:  July 16, 2003

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and SMITH, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Todd Schuler brought an action against SuperValu, Inc., claiming that SuperValu violated the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, when it withdrew an offer of employment that it had previously made to Mr. Schuler. When the district court[1] granted summary judgment in favor of SuperValu, Mr. Schuler appealed. Because we find that Mr. Schuler did not make out a *prima facie* case, we affirm.

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

## I.

Mr. Schuler applied for a position as an order selector at SuperValu's warehouse. SuperValu offered him the position, on the condition that he pass an independent medical examination administered by Occupational Medical Consultants (OMC). During the course of his medical examination, Mr. Schuler indicated that he had epilepsy and that he was taking anti-seizure medications. As a result of this revelation, OMC requested Mr. Schuler's prior medical records and informed SuperValu that a medical recommendation was "on hold for medical records." Three days later, a physician from OMC informed SuperValu that although Mr. Schuler was "medically recommended" for employment, he was medically restricted from driving forklifts and from working around unprotected dangerous equipment or unprotected heights. OMC did not however tell SuperValu that Mr. Schuler had epilepsy.

Mr. Schuler avers that after the results of the medical examination were delivered to SuperValu, he called the company to check on the status of his employment offer. According to him, a human resources specialist at SuperValu then stated that the company could not hire him because of the medical restrictions. Mr. Schuler also alleged that he was told that if he could get OMC to lift the restrictions, SuperValu could hire him.

## II.

We review the district court's grant of summary judgment *de novo*. *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728, 730 (8th Cir. 2003). "Summary judgment is appropriate if, after viewing the evidence and all reasonable inferences from it in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact." *Id.*; *see* Fed. R. Civ. P. 56(c).

To establish a *prima facie* case of discrimination under the ADA, Mr. Schuler had to show, among other things, that he has a disability. *Cooper v. Olin Corp.,*

*Winchester Div.*, 246 F.3d 1083, 1087 (8th Cir. 2001). For purposes of the ADA, a disability is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In this case, Mr. Schuler flatly denies that he is in fact substantially limited in a major life activity; he claims, rather, that he was "regarded as" having an impairment. To succeed on this theory, Mr. Schuler must show that SuperValu "mistakenly believe[d] that [he] has a physical impairment that substantially limits one or more major life activities," or, alternatively, that it "mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). The district court found it unnecessary to determine whether SuperValu's belief that Mr. Schuler was impaired was in fact mistaken, because it concluded that Mr. Schuler could not demonstrate that SuperValu regarded him as substantially limited in a "major life activity" as that term is used in the ADA.

The EEOC guidelines to the ADA contemplate that "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 CFR § 1630.2(i). Mr. Schuler argues that SuperValu mistakenly regarded him as substantially limited in the major life activity of working. As an initial matter, we note "that there may be some conceptual difficulty in defining 'major life activities' to include work" under the ADA. *Sutton*, 527 U.S. at 492. Because the ultimate question to be answered in this kind of case is whether a person was denied the opportunity to work because of a disability, it is questionable logic that would resolve that inquiry by determining whether a person is, or is perceived to be, substantially limited in his ability to work.

The relevant EEOC regulations nevertheless contemplate that "working" is indeed a "major life activity" for purposes of the ADA, 29 C.F.R. § 1630.2(i), and the Supreme Court, despite its reservations concerning the validity of the EEOC

regulations, *see Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 194 (2002); *Sutton* 527 U.S. at 479, has not yet held otherwise. The EEOC, perhaps in an effort to make sense of the conundrum described above, has adopted a specialized definition of the term "substantially limits" when referring to the major life activity of working. According to the EEOC's regulations, a person is substantially limited in the major life activity of working if that person is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).

Even if working is a major life activity under the ADA, we discern there are significant difficulties in Mr. Schuler's claim. First, we sense that Mr. Schuler's claim is fueled, in large part, by his perception that SuperValu may be prejudiced against epileptics. During his lifetime, Mr. Schuler has displayed a great deal of courage and determination in his fight to overcome prejudice against those who are epileptic. We have great respect for his accomplishments, and we are sympathetic to his goals. But the record reflects that the reason for OMC's decision to place Mr. Schuler under medical restriction was never disclosed to SuperValu, nor is there any other evidence that SuperValu knew of his epilepsy before it made the decision to withdraw its employment offer. Mr. Schuler argues that we should impute OMC's knowledge of his epilepsy to SuperValu under the theory that OMC was SuperValu's "company doctor." Although it may be appropriate in certain instances to impute a doctor's knowledge to an employer, we do not believe that this is one of them. OMC is an independent entity that performs medical examinations for several area businesses. The mere fact that OMC renders services to SuperValu is insufficient to establish the type of relationship that would justify imputing OMC's knowledge to SuperValu. They are separate and distinct entities in every relevant respect.

That SuperValu did not know of Mr. Schuler's epilepsy does not, however, mean that he necessarily loses. SuperValu admittedly believed that he was impaired

-4-

in his ability to perform certain activities, specifically, the ability to drive forklifts and work around other dangerous equipment. Indeed, it was this perceived impairment that led SuperValu to the conclusion that Mr. Schuler could not perform the essential functions of a warehouse order selector. The relevant question then becomes whether Mr. Schuler has shown that SuperValu therefore regarded him as significantly restricted in his "ability to perform either a class of jobs or a broad range of jobs," 29 C.F.R. § 1630.2(j)(3)(i). Our review of the controlling cases leads us to the conclusion that he has not made that showing.

In *Sutton v. United Air Lines, Inc.,* the Supreme Court recognized that "[t]o be substantially limited in the major life activity of working ... one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton* 527 U.S. at 492. The Court specifically held that an airline had not regarded job applicants as precluded from either a class of jobs or a broad range of jobs when it refused to hire the applicants based upon their failure to meet a minimum vision requirement for employment as a commercial airline pilot. *See id.* at 491-94. The Court reasoned that there were a number of other jobs, albeit somewhat less attractive ones, that utilized the applicants' skills and were available to them. *See id.* at 493. We believe that the same reasoning applies in this case. SuperValu has determined only that Mr. Schuler is precluded from performing the functions necessary to a specific job in its warehouse. *See, e.g., Conant v. City of Hibbing*, 271 F.3d 782, 785 (8th Cir. 2001) (per curiam); *Cooper*, 246 F.3d at 1090. There is no evidence to suggest that SuperValu viewed Mr. Schuler as unable to perform other manual labor positions or even other warehouse positions. We therefore find it difficult to distinguish this case from *Sutton*.

We think, moreover, that to hold otherwise would create a serious risk of restricting employers in a manner that the ADA does not contemplate. "There is a distinction between being regarded as an individual unqualified for a particular job because of a limiting physical impairment and being regarded as 'disabled' within the

meaning of the ADA." *Conant,* 271 F.3d at 785. An "employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment – such as one's height, build, or singing voice – are preferable to others, just as it is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." *Sutton*, 527 U.S. at 490-91. We suspect that there are many persons who, for reasons other than impairment, would not be able safely and effectively to operate the machinery required for the job of warehouse order selector. We are reluctant to adopt a reading of the ADA that would impose liability on SuperValu every time it made a decision that an applicant was unfit for a particular job.

Finally, we feel obliged to address Mr. Schuler's argument that he would not have been able to hold most of his previous jobs if other employers had adopted similar physical requirements as a prerequisite for employment. Even if we assume the truth of his assertion, "[i]t is not enough to say that if the physical criteria of a single employer were *imputed* to all similar employers one would be regarded as substantially limited in the major life activity of working *only as a result of this imputation*." *Id.* at 493. An otherwise valid job requirement, such as the one utilized by SuperValu, "does not become invalid simply because it *would* limit a person's employment opportunities in a substantial way *if* it were adopted by a substantial number of employers" *Id.* at 493-94.

Because Mr. Schuler cannot demonstrate that SuperValu regarded him as substantially limited in a major life activity, he has failed to establish a prima facie case of disability discrimination under the ADA. We therefore affirm the district court's grant of summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.