324 F.Supp.2d 1036 (2004)
Thomas NICHOLS, Plaintiff,
v.
ABB DE, INC., Defendant.
No. 2:02CV00073 ERW.
United States District Court, E.D. Missouri, Northern Division.
April 29, 2004.
*1037 *1038 *1039 Sherrie A. Schroder, Diekemper and Hammond, St. Louis, MO, for Plaintiff.
Jerry M. Hunter, Timothy C. Mooney, Jr., Bryan Cave LLP, St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
WEBBER, District Judge.
Before the Court is Defendant's Motion for Summary Judgment [doc. # 38]. For the foregoing reasons, that motion is granted.

I. Background
Thomas Nichols ("Nichols") worked in various jobs at ABB DE, Inc. ("ABB") from early 1986, when the plant was owned by Westinghouse Corporation, until August 2000. He was hired as a full-time employee in 1989. In 1997, Nichols injured his back while working as a fork truck driver on the three-phase paint line, and in early July of that year, a doctor placed him on a 25-pound lifting restriction, diagnosing him with a degenerative disc condition. Nichols filed a workers' compensation claim as a result of this injury. After remaining on leave for roughly three months, Nichols returned to work with no restrictions in October 1997. Instead of placing Nichols in his old position, ABB assigned him to a job in the grinding booth. The next day, Nichols left work because he could not tolerate the bending required of his job. He then remained on medical leave from October 23, 1997 through February 16, 1998. After returning to work, Nichols complained of the same problem, and went on medical leave a third time after working for four days. On March 20, 1998, a second doctor limited Nichols to carrying a maximum of 40 pounds, and restricted his hourly bending, twisting, and stooping.
Shortly thereafter, on April 15, 1998, Robert Pickering, an employee relations manager, informed Nichols that ABB had no jobs that Nichols could perform with his medical restrictions. As a result, Nichols remained on medical leave until January 25, 1999, when he returned to work after being released by a physician with no *1040 medical restrictions. Again, unable to tolerate the bending required by the job, Nichols returned to medical leave, where he remained until February 12, 1999. When he returned from work this time, he worked in section 221, process A, on the three-phase tank line, where he was required to use a crane to place boards on top of the three-phase tanks.
In March 1999, Nichols suffered back complications while walking at a grocery store, which required him to leave work on March 15. He thereafter had back surgery to correct the problem in April 1999. He did, however, return to work on October 11, 1999 without any medical restrictions. He was medically capable of performing any job ABB could offer. After working without incident for roughly five months, Nichols heard a pop in his back in March 2000 while moving a unit from a conveyor to the floor, and went on medical leave until June 2000.
On August 7, 2000, Nichols bid for and won a fork truck driver position, and worked for four days before leaving with back problems. On August 17, Dr. David Kennedy placed permanent work restrictions on Nichols, limiting him to lifting no more than 40 pounds, with only occasional bending, twisting, or stooping. After not working for four months, Nichols sought the opinion of Dr. Glen Cooper, who agreed with Dr. Kennedy's assessment.
In early December 2000, John Suttenfield, one of Nichols's supervisors, notified Nichols that he had sent Dr. Cooper three videotapes, containing information on a robotic welding job and an assembler accessories job. Suttenfield did not tell Nichols that ABB had a vacancy for either of those jobs, but Nichols claims that Suttenfield told him that he could return to work shortly if Dr. Cooper approved him for either position. Dr. Cooper recommended that Nichols not be authorized to work in the robotic welding department, but concluded that he could probably perform the assembler accessories job. Nichols claims that Suttenfield told him that Dr. Cooper rejected him for both jobs. Suttenfield denies this.
In any case, Suttenfield created a memorandum dated January 10, 2001, outlining the steps ABB followed, attempting to find Nichols a job. Checking the lifting and bending requirements for all hourly jobs against Nichols's permanent medical restrictions, ABB came up with four jobs: robot operator, feeder equipment operator, steel fabricator, and coil winding and shipping processor.[1] None of the jobs, however, came open for Nichols, and under ABB's collective bargaining agreement with the United Auto Workers union, ABB was not authorized to place him in a position unless one was open.
On January 15, 2001, Suttenfield sent Nichols a letter, advising him that he had received Nichols's permanent work restrictions from Dr. Kennedy and Dr. Cooper. He informed Nichols that the jobs which he had seniority to hold under the procedures of the UAW contract did not fit the requirements of his permanent work restrictions. Nichols treated this letter as a termination, and filed a charge of disability discrimination with the EEOC on May 14, 2001. He did not check the box marked "retaliation," and he did not mention retaliation in the portion of the charge containing the particulars. Nichols then brought suit against ABB in this Court, alleging *1041 disability discrimination under both the Americans with Disabilities Act and Missouri Human Rights Act, retaliation under both statutes, as well as workers' compensation retaliation, in violation of Missouri state law.

II. Discussion

A. Summary judgment standard
Summary judgment is appropriate only if all of the information before the court shows there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those that might affect the outcome of the suit under the governing law. Id. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, ... there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548.
The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir.1988). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. Anderson, 477 U.S. at 249, 106 S.Ct. 2505. To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. Id. The non-moving party is given the benefit of any inferences that can logically be drawn from the facts. Id.

B. Nichols's claims

(1) Disability discrimination
The Court analyzes Nichols's disparate treatment allegation under both the ADA and the Missouri Human Rights Act, Epps v. City of Pine Lawn, 353 F.3d 588, 591 (8th Cir.2003), using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that scheme, Nichols must establish a prima facie case of disability discrimination. Longen v. Waterous Co., 347 F.3d 685, 688 (8th Cir.2003). To establish a prima facie case for disability discrimination under the ADA, Nichols must show (1) that he has a disability within the meaning of the ADA; (2) that he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment action because of his disability. Epps v. City of Pine Lawn, 353 F.3d 588, 591 (8th Cir.2003). The Eighth Circuit has also articulated the third prong as a requirement that the plaintiff show that he suffered an adverse employment action under circumstances that raise an inference of unlawful disability discrimination. See Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 684 (8th Cir.2003). Summary judgment to ABB is proper if Nichols fails to establish any element of his prima facie case. Id. at 592. If Nichols establishes a prima facie case, the burden shifts to ABB to rebut the presumption of discrimination by articulating a legitimate non-discriminatory reason for the adverse employment *1042 action. Longen, 347 F.3d at 688. If ABB does this, the burden of production shifts back to Nichols to demonstrate that ABB's non-discriminatory reason is pretextual. Id.
To establish a prima facie case, Nichols must show that he is disabled within the meaning of the ADA. A plaintiff is disabled within the meaning of the ADA if he (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). Apparently conceding that Nichols's back injury constitutes a physical impairment, ABB argues that summary judgment is appropriate because the impairment does not substantially limit any of his major life activities. The EEOC Guidelines to the ADA contemplate that major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i); see also Schuler v. SuperValu, Inc., 336 F.3d 702, 704 (8th Cir.2003). In response to ABB's contentions, Nichols lists child rearing, general mobility as it relates to driving, and recreating (such as working on old cars and participating in sports) as the major life activities he claims his back injury substantially limits.
To be substantially limited in performing tasks, an individual "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Toyota Motor Mfg., Kentucky, Inc., v. Williams, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); Philip v. Ford Motor Co., 328 F.3d 1020, 1025 (8th Cir.2003). The Court thus considers whether Nichols's back injury prevents or severely restricts his general mobility, recreating, or child rearing. In doing so, the Court also considers the nature and severity of his impairment, its duration or anticipated duration, and its long-term impact. 29 C.F.R. § 1630.2(j)(2); Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 685 (8th Cir.2003).
Nichols testified in his deposition that he has performed a significant amount of plumbing work for his customers, including installing hot water heaters and a sewage pump. He regularly works from 7:30 a.m. to 5:00 p.m. each day, and has crawled under a house to repair a leak. Nichols has also provided lawn mowing services, utilizing a large mower, as well as a weed eater and blower. These facts belie Nichols's claim that his general mobility is substantially limited. Accepting Nichols's claim as true that he cannot drive for more than two to two and one-half hours at a time (and that driving is a major life activity), this is not a substantial restriction under the Eighth Circuit's well-established case law. See Wood, 339 F.3d at 685 (holding that a back injury that limited the plaintiff to walking a quarter-mile without stopping as a moderate, but not a substantial restriction).
Nichols also claims that his back injury substantially limits his child-rearing, but his argument is premised on the notion that activities like swimming, playing basketball and football and running after his children are central to child-rearing. The Eighth Circuit has held, however that that activities such as playing tennis, fishing, and hiking, and caring for others do not qualify as major life activities. Weber v. Strippit, Inc., 186 F.3d 907 (8th Cir.1999) (playing tennis, fishing, and hiking); Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 677 (8th Cir.1996) (caring for others). These cases control the resolution of this claim, in the Court's view, as Nichols has pointed to no cases suggesting that normal recreational activities become major life activities when one's children are involved. *1043 Further, he acknowledges that he can wade in the water with his children, provided the water does not get too high. Nichols Deposition p. 173-74. He also admitted in his deposition that he can play basketball with his children, but he has to stand in one spot and shoot, as opposed to dribbling and moving about constantly. Nichols Deposition p. 179. Nichols can also play football, but he is relegated to playing the quarterback position (throwing the football). Nichols Deposition p. 180. Even if these were major life activities, his restrictions on playing with his children are thus not substantial under the strict limitations imposed by the Taylor and Wood cases, but minor inconveniences for ADA purposes. Limitations on his working on old cars is also not a major life activity for the same reasons the Court discussed above. Because Nichols is not substantially limited in any major life activity, the Court grants summary judgment to ABB on his disability discrimination claim.
Nichols argues that even if he is not substantially limited in a major life activity, his cause of action survives because ABB regarded him as disabled. 42 U.S.C. § 12102(2)(C). To succeed on this claim, Nichols must show either (1) that ABB mistakenly believed that he had a physical impairment that substantially limited one or more major life activities; or (2) that ABB mistakenly believed that an actual, non-limiting impairment substantially limited one or more of Nichols's major life activities. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); Schuler v. SuperValu, Inc., 336 F.3d 702, 704 (8th Cir.2003). Thus, ABB must have had a misperception, believing either that Nichols had a substantially limiting impairment that he did not have, or that he had a substantially limiting impairment when, in fact, the impairment was not so limiting. EEOC v. United Parcel Serv., Inc., 306 F.3d 794, 803 (9th Cir.2002).
Nichols does not precisely identify in his response the major life activity as to which substantial limitation ABB allegedly misperceived him to have. It appears that Nichols is arguing that ABB regarded him as disabled with respect to the major life activity of working. To be substantially limited in the major life activity of working, a plaintiff must be unable to work in a broad class of jobs, Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), and suffer a significant reduction in meaningful employment opportunities as a result of his impairments. Wood, 339 F.3d at 686 (quoting Philip v. Ford Motor Co., 328 F.3d 1020, 1024 (8th Cir.2003)). An impairment is not substantially limiting in this regard if it disqualifies a person from only a narrow range of jobs. Wood, 339 F.3d at 686 (internal quotations omitted).
Although it is clear that ABB management knew that Nichols had medical restrictions, Nichols has presented no evidence in the record to show that ABB believed he was substantially limited from performing a broad range of jobs. Nichols argues that there is a genuine dispute because following his injury, he was forced to remain on medical leave of absence when he had been released to work with restrictions, and he was required to be approved to return to undergo an examination conducted by a doctor of the company's choice. In addition, Nichols claims that there is a genuine dispute because Suttenfield told him that he would return to work if Dr. Cooper approved him for one of the jobs on the tapes, and ABB did not put him in the job Cooper authorized.[2] *1044 This is not evidence that ABB regarded him as disabled. ABB could not have put Cooper in a job under the collective bargaining agreement if it was not open. Even if one accepts Nichols's claim as true, and assumes that Suttenfield somehow misled Nichols into believing that the company had the accessory assembler position available, the company's failure to put him in the position is not evidence that the Company thought Nichols was disabled. Nichols acknowledges that he could not take the spot if it was not open, and he has no evidence to suggest that it was open.
Next, Nichols cites Ollie v. Titan Tire Corp., 336 F.3d 680 (8th Cir.2003) to support his case. In Ollie, the plaintiff, who had asthma, applied for a job in a tire plant. The company's doctor said in his report that Ollie was "medically able to do the essential functions of the job" with certain accommodations, but "may have difficulty in areas with dust or fumes." The company then concluded that because there was no place in the plant that didn't have dust or fumes, there was no available job for him. The Eighth Circuit held that a reasonable jury could have found that the company perceived Ollie as disabled, because it functionally misinterpreted the doctor's report. It distinguished that case from others like Wooten v. Farmland Foods, 58 F.3d 382 (8th Cir.1995) where the doctor restricted the plaintiff to light duty, no work in cold environments and twenty pounds maximum lifting. In Wooten, the court held that an employer does not regard an employee as disabled when it lays him off based upon the physical restrictions imposed by a doctor when no jobs accommodating those restrictions were available. Id. at 386.
In the Court's view, Wooten controls the outcome here. As in Wooten, the doctor in this case imposed certain lifting and bending restrictions, and there were no positions available for Nichols that fit within those restrictions. Nichols's reasoning proceeds along the following lines: (1) Suttenfield told him that if Cooper approved me for one of the jobs on the tape I could go to work soon; (2) Cooper approved him for the accessor assembly job; (3) Nichols didn't get the accessor assembly job, so ABB must have perceived him to be disabled in the major life activity of working. The problem with Nichols's argument is that it ignores the undisputed evidence that he didn't get the accessor assembly job because it wasn't open. In addition, ABB personnel delivered video tapes to Dr. Cooper to try to find Nichols a job with the Company; this is clear evidence that ABB thought he could work. The record clearly shows that ABB's failure to place Nichols in a job was based upon clear medical restrictions, not misperceptions. Thus, no reasonable jury could conclude that ABB regarded Nichols as being disabled.
Nichols also claims that he requested that ABB provide him with a reasonable accommodation, but that ABB failed to even investigate whether he was disabled or engage in an interactive process. It is unclear whether Nichols is asserting a separate cause of action for failure to make a reasonable accommodation; in his brief he discusses it in the context of his perceived disability claim. In either case, ABB is not required to reasonably accommodate someone who is not a "qualified individual with a disability" under the ADA. 42 U.S.C. § 12112(b)(5)(A). This Court had already determined that Nichols is not substantially limited in a major life activity. What is more, the Eighth Circuit clearly held in Weber v. Strippit, Inc., 186 F.3d 907 (8th *1045 Cir.1999) that "regarded as" disabled plaintiffs are not entitled to reasonable accommodations. Id. at 917. In the court's view, imposing liability on employers who fail to accommodate non-disabled employees would lead to the "bizarre result" of allowing an employee to receive an accommodation for a non-disabling impairment that no similarly situated employee would enjoy. Id. at 916. Thus, even if the Court takes Nichols's claim as true, it cannot allow a reasonable accommodation claim to go forward because Nichols is not substantially limited in a major life activity. Nor, can the Court consider ABB's failure to make a reasonable accommodation a genuine dispute of material fact on Nichols's perceived disability claim. Even if ABB did not make a reasonable accommodation, it was not required to do so under Weber, and its failure to do so is not evidence that ABB regarded him as disabled.[3]
The record in this case shows no material dispute of fact concerning whether Nichols was a disabled person within the meaning of the ADA. Thus, the Court grants summary judgment to ABB on Nichols's disparate treatment claim, and his reasonable accommodation claim fails for the same reason.

(2) Retaliation
While it is illegal under the ADA and the MHRA to discriminate against an individual filing a charge under the statute, see 42 U.S.C. § 12203(a), the Court finds that Nichols's retaliation claim is barred because he failed to exhaust his administrative remedies. Generally, a plaintiff may not bring claims under the ADA that were not originally included in the charges made to the EEOC. Allowing complaints beyond the EEOC charge would both deprive the charged party of notice of the allegations against it and circumscribe the EEOC's investigatory role. Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir.1994) (citations omitted). The one exception to this is for "discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir.2002). Therefore, the breadth of a civil suit is only as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination. Stuart v. General Motors, 217 F.3d 621, 630-31 (8th Cir.2000). Because the Eighth Circuit has held numerous times that retaliation claims are not reasonably related to underlying claims of discrimination, see, e.g., Wallin v. Minnesota Dep't of Corrections, 153 F.3d 681, 688 (8th Cir.1998), the Court must not consider this claim unless the retaliation claim somehow grew out of the discrimination charge Nichols filed with the EEOC. Id.
Nichols argues that the retaliation claim does grow out of the discrimination charge, because some of the alleged retaliatory conduct occurred after Nichols filed the EEOC charge. He claims that his counsel sent a letter to the EEOC investigator enclosing a letter to ABB which raised the issue of retaliatory conduct that ABB engaged in after he filed his charge. The letter to the EEOC investigator attached two letters: one from Suttenfield to Nichols, and one from Nichols's attorney *1046 to Suttenfield in response. Plaintiff's Exhibit 10 in Opposition to Summary Judgment. On August 12, 2002, Suttenfield wrote Nichols to inform him that ABB was transferring him from the active rolls to the long-term disability rolls because it was company policy to do so for all employees who had been away from work for two years on medical restrictions. The letter also notified Nichols that he would be paid all of his unused vacation time, and that he would continue to receive long-term disability benefits until he no longer met the criteria or until he reached retirement eligibility. Nichols's attorney responded to Suttenfield's letter with a letter of her own, stating that ABB's latest adverse employment action (presumably referring to the transfer of Nichols from active to long-term disability) was "an additional aspect of [Nichols's] discrimination and retaliation claims."
The Court does not believe that the single reference to retaliation in that attachment was enough to put the EEOC on notice of a retaliation claim, but that is besides the point. To avoid having his claim barred for failing to exhaust his administrative remedies, Nichols must show that his retaliation claim grew out of the charge of discrimination, meaning that he can not recover for retaliatory conduct that occurred before the charge if he doesn't mention it in the charge. See Wallin v. Minnesota Dep't of Corrections, 153 F.3d 681, 688 (8th Cir.1998) (dismissing the plaintiff's retaliation claim because "the retaliation [plaintiff] alleges was not the result of his filing the EEOC charge," but "occurred at the same time as the alleged discrimination, long before he filed a charge of discrimination with the EEOC").
In Nichols's First Amended Complaint, filed in March 2003, long after his EEOC charge in May 2001, he alleged that ABB violated his rights by suspending, and then discharging him, solely or in part, in retaliation for his request for a reasonable accommodation. First Amended Complaint ¶¶ 29 & 33. The First Amended Complaint mentioned nothing about conduct that occurred after the charge, and thus indicated that ABB's last act of retaliatory conduct was discharging Nichols, which, according to Nichols, occurred on January 15, 2001. First Amended Complaint ¶¶ 23 & 24. While Nichols argues in his response to ABB's motion that ABB retaliated against him after he filed his charge by ceasing to accept bids from him, removing him from its active rolls and ceasing to attempt to place him in a job, he neither mentioned those allegations nor a general allegation that he was suing for post-charge retaliation in his First Amended Complaint. Like the plaintiff in Wallin, Nichols brought forth allegations of pre-charge retaliation without mentioning retaliation in his EEOC charge. The Court is thus required to dismiss the ADA and MHRA retaliation claims for failure to exhaust administrative remedies. Even if those retaliation claims are somehow properly before the Court, Nichols can not show that ABB's removing him from the company rolls after two years on medical restriction was not company policy, or was somehow a pretext for discrimination. Amir v. Saint Louis University, 184 F.3d 1017, 1026 (8th Cir.1999). Thus, summary judgment is appropriate on the ADA and MHRA retaliation claims even if they are properly before the Court.
Nichols also alleges that ABB retaliated against him for filing a workers' compensation claim, in violation of Mo.Rev.Stat. § 287.780, which prohibits employers from discharging or other otherwise discriminating against employees who exercise their workers' compensation rights. The Missouri Supreme Court has held that to recover under this statute, the plaintiff *1047 must prove an exclusive causal connection between his exercise of a workers' compensation right and an adverse employment action. Crabtree v. Bugby, 967 S.W.2d 66, 71 (Mo.1998). This exclusive causal relationship has been held not to exist when the reason for the adverse action is valid and nonpretextual. St. Lawrence v. Trans World Airlines, Inc., 8 S.W.3d 143, 149 (Mo.Ct.App.1999).
Nichols filed his workers' compensation claim in 1997, more than three years prior to Suttenfield's Janurary 15, 2001 letter which Nichols has treated as a discharge. Nonetheless, he argues that ABB retaliated against him for filing it. It is clear that Nichols can not rely on this temporal proximity alone to avoid summary judgment. Hickman v. May Dep't Stores, 887 S.W.2d 628, 631 (Mo.Ct.App.1994) (holding that nine-month span between discharge and filing a workers' compensation claim insufficient, without more substantial evidence of causality, to submit the claim to the jury). In addition to the other arguments Nichols used in support of his ADA and MHRA retaliation claims, Nichols alleges that Jerry Siebeneck, ABB's Workers Compensation Manager at the time, told him he had to settle his claim because ABB was tired of it. Nichols does not say when this statement was made. Even if it is true, Nichols still does not have any evidence that ABB did not make the decisions it made because it had no positions available that fit Nichols's medical restrictions.[4] Moreover, other than the alleged discharge, Nichols suffered no adverse action. It is undisputed that he went on medical restriction and came back to work several times, and he was allowed to bid and compete for jobs upon his return. Indeed he bid on the job to which he claims ABB assigned him to make his life more difficult, and he can hardly be heard to complaint about it now. Like his ADA and MHRA retaliation claims, Nichols can not prove the requisite causal connection between protected activity and an adverse decision, nor can he show that ABB's reason for any adverse action was a pretext for retaliation. Accordingly, the Court grants summary judgment to ABB.

III. Conclusion
Nichols's disability discrimination claims fail because he is unable to prove that he was disabled within the meaning of the ADA. In addition, his retaliation claims fail because he failed to exhaust his administrative remedies, and because he is unable to establish a causal connection between his termination and any protected activity. For these reasons, the Court grants summary judgment to ABB on all counts.
Therefore,
IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [doc. # 38] is GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE.
IT IS FURTHER ORDERED that all other pending motions are DENIED as moot.

JUDGMENT
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Judgment is for Defendant and against Plaintiff, *1048 and Plaintiff's claims are DISMISSED WITH PREJUDICE.
NOTES
[1] In opposing ABB's summary judgment motion, Nichols attempted to introduce evidence through affidavits of his co-workers that ABB had available jobs that fit within Nichols's medical restrictions. The Court struck all of this evidence because it concluded that the affiants did not set forth a sufficient foundation about their personal knowledge of the positions available.
[2] Nichols also argues in a different section of his brief that Suttenfield told him that Dr. Cooper had rejected him for the accessor assembly job. Even if the Court accepts Nichols's version of events as true, Nichols has not rebutted ABB's claim that the job was not available under the terms of the collective bargaining agreement.
[3] Nichols claims in his affidavit that Pickering told him, "This is between me and you, Tom. There is life outside the plant. Go on with your life, we don't have anyone here on disability." The Court, however, struck this evidence because Nichols did not mention it in his deposition. Even it Pickering made this statement, it does not provide evidence that ABB thought Nichols was disabled within the meaning of the ADA.
[4] Nichols's co-workers attempted to testify in affidavits about positions that were available, but the Court struck this evidence because Nichols could not lay an adequate foundation as to the affiant's personal knowledge on the availability of the positions. In addition, the affiants were not competent to testify about whether a position fit Nichols's medical restrictions.