340 F.Supp.2d 1008 (2004)
Craig BISHOP, Plaintiff,
v.
NU-WAY SERVICE STATIONS, INC., d/b/a Nu-Way Service, Inc., Defendants.
No. 4:02 CV 1814 JCH.
United States District Court, E.D. Missouri, Eastern Division.
September 23, 2004.
*1009 Kathryn E. Denner, Denner and Lynn, John D. Lynn, Denner and Lynn, St. Louis, MO, for Craig Bishop, Plaintiff.
Corey L. Franklin, McMahon and Berger, James N. Foster, Jr., McMahon and Berger, St. Louis, MO, for Nu-Way Service Station, Inc., dba Nu-Way Service, Inc., Defendants.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before the Court on Defendant's Motion for Summary Judgment and Requests for Fees and Costs Pursuant to 42 U.S.C. § 12205 ("Defendant's Motion for Summary Judgment"), filed June 25, 2004. (Doc. No. 44). The matter is fully briefed and ready for disposition.

BACKGROUND
Plaintiff began working for Defendant as a mechanic on the night shift in September, 1998. (First Amended Compl., ¶ 5). As a mechanic, Plaintiff was expected to perform service calls, tractor preventative maintenance, tractor repairs, tire work and brake work. (Defendant's Statement of Uncontroverted Material Facts ("Defendant's Facts"), ¶ 15, citing Plaintiffs Dep., PP. 22-24; Mariano Costello Dep., P. 7). As a condition of Plaintiffs employment with Defendant, Plaintiff became a member of Teamsters Local 618. (Defendant's Facts, ¶ 24, citing Plaintiffs Dep., P. 19). Pursuant to its Collective Bargaining Agreement ("CBA"), Teamsters Local 618 acted as the sole bargaining agent for employees under its jurisdiction. (Defendant's Facts, ¶ 25, citing Defendant's Exh. A, Collective Bargaining Agreement).
In August, 2000, Plaintiff was diagnosed with multiple sclerosis ("MS"). (Defendant's Facts, ¶¶ 105, 106, citing Plaintiffs Dep., PP. 52-53). As a result, Plaintiff was placed on disability leave from August, 2000 through October 19, 2000. (Id., ¶¶ 107, 110, citing Plaintiffs Dep., PP. 53-54, 181).
On October 17, 2000, Defendant sent a letter to Plaintiff, requesting that he provide paperwork setting forth his ability to perform the work required for his position. (Defendant's Facts, ¶ 113, citing Defendant's Exh. CC). The letter further indicated that if Defendant failed to receive paperwork regarding Plaintiffs condition within five working days, Defendant would assume Plaintiff had resigned his position with Defendant. (Id., ¶ 114, citing Defendant's Exh. CC). On October 19, 2000, Plaintiffs neurologist, Dr. Ahmed H. Jafri, *1010 issued a release for Plaintiffs return to work with restrictions. (Id., ¶ 110, citing Defendant's Exh. X). Specifically, Plaintiffs release required that Plaintiff be permitted to work during daylight hours, i.e., the morning shift, and that Plaintiff be restricted from performing strenuous work. (Id.,¶¶ 111, 112, citing Defendant's Exh. X).[1]
On October 23, 2000, Defendant sent Plaintiff a letter indicating it had neither day nor night openings that could accommodate the restrictions placed by Dr. Jafri. (Defendant's Facts, ¶ 116, citing Defendant's Exh. DD). The letter directed Plaintiff to return to his normal shift without restriction, or to resign his position. (Id., ¶ 117, citing Defendant's Exh. DD).
On or about October 30, 2000, Plaintiff met with company representative Mariano Costello ("Costello") and Union Shop Steward Greg Maschmeyer ("Maschmeyer"), to discuss his ability to return to work. (Defendant's, Facts, ¶ 123, citing Plaintiffs Dep., PP. 67-68). On November 2, 2000, Defendant sent Plaintiff another letter, again stating there were neither day nor night openings for work requiring little or no heavy lifting. (Id., ¶ 125, citing Defendant's Exh. BB). In the letter, Defendant asked that Plaintiff resign his position as a mechanic. (Id.).
On November 30, 2000, Plaintiff filed a written grievance regarding Defendant's refusal to assign him a mechanic's position on the day shift. (Defendant's Facts, ¶ 125, citing Defendant's Exh. M). The Grievance was signed by Plaintiff and Maschmeyer. (Plaintiffs Statement of Uncontroverted Facts ("Plaintiffs Facts"), ¶ 6). On December 18, 2000, a meeting was held in an effort to resolve Plaintiffs grievance regarding his desire to return to work as a mechanic. (Defendant's Facts, ¶ 127, citing Defendant's Exh. N; Plaintiffs Dep., PP. 75-77). The meeting was attended by Teamsters Local 618 President Robert Miller, Shop Steward Maschmeyer, company representative Costello, and Plaintiff. (Id., ¶ 136, citing Defendant's Exh. L; Plaintiffs Dep., PP. 82-83; Maschmeyer Dep., P. 46). Eventually, Costello and Miller asked Maschmeyer and Plaintiff to leave the meeting, while they contacted Defendant's owner, Don Costello, Sr., in an effort to facilitate a settlement of the grievance. (Id., ¶ 144, citing Plaintiffs Dep., PP. 91-93).
Following the closed meeting, Plaintiff drafted an Agreement dated December 18, 2000, which stated in its entirety as follows:
I Craig T. Bishop agree to resign my position as a mechanic at Nu-Way Services with the provision that Nu-Way pay my health & welfare benefits through July 2001. In addition Nu-Way will pay me the sum of $5,000.00 before Jan. 7, 2001 as severance pay. I further agree that after all monies & benefits are paid I agree that I will not hold Nu-Way Services liable for any further financial obligations. *1011 (Defendant's Exh. L). The settlement agreement was signed by Plaintiff and company representative Costello, and witnessed by Union President Miller and Union Shop Steward Maschmeyer. (Id.).
Plaintiff did not receive his severance benefits in January, 2001. (First Amended Compl., ¶ 32). Instead, Plaintiff's $5,000.00 severance check was sent via certified mail in March, 2001. (Id., ¶ 34). Upon receiving the severance pay, Plaintiff turned the check over to his retained attorney, who made a copy and returned the original to Defendant.
Plaintiff filed his First Amended Complaint in this matter on October 22, 2003. (Doc. No. 24). In his First Amended Complaint, Plaintiff levels charges of failure to make reasonable accommodations, in violation of both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Missouri Human Rights Act ("MHRA"), Mo.Rev.Stat. § 213.010 et seq. (Counts I and II); wrongful termination, in violation of both the ADA and the MHRA (Counts III and IV)[2]; and equitable rescission (Count V). (Id.).[3] As stated above, Defendant filed the instant Motion for Summary Judgment on June 25, 2004, asserting that it is entitled to summary judgment, as the undisputed facts demonstrate Plaintiff is unable to establish a prima facie case of disability discrimination, and Defendant has articulated a legitimate, nondiscriminatory reason for its action. (Doc. No. 44).

SUMMARY JUDGMENT STANDARD
The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.
A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323,106 S.Ct. 2548. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R.Civ.P. 56(e); Anderson, 477 U.S. at 247, 106 S.Ct. 2505. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256,106 S.Ct. 2505.
*1012 In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255, 106 S.Ct. 2505. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249,106 S.Ct. 2505.

DISCUSSION
The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA") prohibits employers from discriminating against qualified individuals with a disability on the basis of such disability. Brunko v. Mercy Hospital, 260 F.3d 939, 941 (8th Cir.2001), citing 42 U.S.C. § 12112(a). In order to establish a prima facie case of employment discrimination under the ADA, Plaintiff must show that (1) he has a disability within the meaning of the ADA, (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability. Conant v. City of Hibbing, 271 F.3d 782, 784 (8th Cir.2001), citing Cooper v. Olin Corp., Winchester Div., 246 F.3d 1083, 1087 (8th Cir.2001). If Plaintiff meets his burden of establishing a prima facie case of disability discrimination, a rebuttable presumption of discrimination emerges, and Defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Kellogg v. Union Pacific Railroad Co., 233 F.3d 1083, 1086 (8th Cir.2000), citing Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir.1999) (en banc). If Defendant successfully rebuts the presumption, then Plaintiff must demonstrate that Defendant's nondiscriminatory reason was merely a pretext for discrimination. Kellogg, 233 F.3d at 1086 (citation omitted).
To establish a disability under the ADA, Plaintiff must demonstrate that: "(A) he is physically or mentally impaired such that he is substantially limited in one or more major life activity, (B) he has a record of such an impairment; or (C) he is regarded as having such an impairment.'" Kellogg, 233 F.3d at 1086-87, citing 42 U.S.C. § 12102(2).[4] "`Major life activities' include `caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Conant, 271 F.3d at 784 (quoting 29 C.F.R. § 1630.2(i)). Further, "[w]hen referring to the major life activity of working, the EEOC defines `substantially limits' as: `significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" Murphy v. UPS, Inc., 527 U.S. 516, 523, 119 S.Ct. 2133, 2138, 144 L.Ed.2d 484 (1999) (quoting 29 C.F.R. § 1630.2(j)(3)(i) (1998)). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

A. Count I

In Count I of his First Amended Complaint, Plaintiff alleges Defendant's failure to make reasonable accommodations constituted unlawful discrimination within the meaning of the ADA. (First Amended Compl., ¶ 24). Upon consideration, *1013 the Court finds the Eighth Circuit specifically rejected Plaintiffs claim in Weber v. Strippit, Inc., 186 F.3d 907 (8th Cir.1999), cert. denied, 528 U.S. 1078, 120 S.Ct. 794, 145 L.Ed.2d 670 (2000). In Weber, the district court granted judgment as a matter of law for defendants on Weber's claim of actual disability. Weber, 186 F.3d at 910. The court then submitted Weber's perceived disability claim to the jury, but refused to give an instruction on reasonable accommodations. Id. at 910, 915. On appeal, Weber asserted the district court erred in failing to give the requested instruction. Id. at 915. The Eighth Circuit rejected Weber's claim, as follows:
Weber takes the position that an employer is liable under the ADA where it fails to reasonably accommodate either an actual or a perceived disability. The district court rejected Weber's position, holding that an employer need only accommodate actual disabilities and, because the court granted judgment as a matter of law on Weber's actual disability claim, no reasonable accommodation instruction was required. We agree with the district court.
The first element of a prima facie case of disability discrimination required Weber to demonstrate that he was "disabled" within the meaning of the ADA. The second element, which is the focus of the present analysis, required him to demonstrate that he was a "qualified individual," which the ADA defines as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). This inquiry has two prongs. "First, a court must determine whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires." Deane v. Pocono Med. Ctr., 142 F.3d 138, 145 (3d Cir.1998) (en banc) (citing 29 C.F.R. pt. 163, app. § 1630.2(m)). "Second, it must determine whether the individual, with or without reasonable accommodation, can perform the essential functions of the position held or sought." Id. (emphasis added); see also Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1111-12 (8th Cir.1995).
The reasonable accommodation requirement is easily applied in a case of an actual disability. Where an employee suffers from an actual disability (i.e., an impairment that substantially limits a major life activity), the employer cannot terminate the employee on account of the disability without first making reasonable accommodations that would enable the employee to continue performing the essential functions of his job. Thus, it is enough to make out a prima facie case of disability discrimination that an individual is actually disabled, that he can perform the essential functions of his job with or without reasonable accommodations, and that his employer discriminated against him on account of his disability. This application of the reasonable accommodation requirement is perfectly consistent with the ADA's goal of protecting individuals with disabling impairments who nonetheless can, with reasonable efforts on the part of their employers, perform the essential functions of their jobs.
The reasonable accommodation requirement makes considerably less sense in the perceived disability context. Imposing liability on employers who fail to accommodate non-disabled employees who are simply regarded as disabled would lead to bizarre results. Assume, for instance, that Weber's heart condition prevented him from relocating to Akron but did not substantially limit any major life activity. Absent a perceived disability, defendants could terminate *1014 Weber without exposing themselves to liability under the ADA. If the hypothetical is altered, however, such that defendants mistakenly perceive Weber's heart condition as substantially limiting one or more major life activities, defendants would be required to reasonably accommodate Weber's condition by, for instance, delaying his relocation to Akron. Although Weber's impairment is no more severe in this example than in the first, Weber would now be entitled to accommodations for a non-disabling impairment that no similarly situated employees would enjoy....
The ADA cannot reasonably have been intended to create a disparity in treatment among impaired but non-disabled employees, denying most the right to reasonable accommodations but granting to others, because of their employers' misperceptions, a right to reasonable accommodations no more limited than those afforded actually disabled employees. Accordingly, we hold that "regarded as" disabled plaintiffs are not entitled to reasonable accommodations and that the district court did not err in failing to give a reasonable accommodation instruction.
Weber, 186 F.3d at 915-16, 917. See also Habib-Stevens v. Trans States Airlines, Inc., 229 F.Supp.2d 945, 948 (E.D.Mo.2002) ("regarded as" disabled plaintiffs are not entitled to reasonable accommodations); Nichols v. ABB DE, Inc., 324 F.Supp.2d 1036, 1044-45 (E.D.Mo.2004) (same).[5] This Court thus finds that Plaintiffs claim of disability discrimination on the basis of Defendant's failure to make reasonable accommodations is barred by Eighth Circuit precedent, and so Defendant's Motion for Summary Judgment on Count I will be granted.

B. Count III

In Count III of his First Amended Complaint, Plaintiff alleges Defendant's termination of Plaintiffs employment constituted unlawful discrimination within the meaning of the ADA. (First Amended Compl., ¶ 28). As noted above, "[t]o establish a prima facie case of discrimination under the ADA, [Plaintiff] must show that (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job, with or without accommodation; (3) and he suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." Galambos v. Fairbanks Scales, 144 F.Supp.2d 1112, 1124 (E.D.Mo.2000), citing Allen v. Interior Construction Services, Ltd., 214 F.3d 978, 980-81 (8th Cir.2000).
In his Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiff alleges he was disabled within the meaning of the ADA because Defendant regarded him as disabled; in other words, Plaintiff maintains Defendant unlawfully regarded Plaintiff as having a physical impairment that substantially limited him in the major life activities of working and driving. (Plaintiff's Memo in Opp., PP. 3-8). Defendant strenuously contests this assertion. (Defendant's Reply Memorandum in Support of its Motion for Summary Judgment, PP. 2-11). The Court need not decide whether Defendant perceived Plaintiff to be disabled within the meaning of the ADA, however, as Plaintiff fails to create a genuine issue of material fact with respect to the second element of his prima facie case.
Ordinarily, the second element of a prima facie case of disability discrimination *1015 requires Plaintiff to show he is qualified to perform the essential functions of his job, with or without reasonable accommodation. Nichols, 324 F.Supp.2d at 1041 (citation omitted). As noted above, however, the Eighth Circuit has held that a plaintiff claiming only a perceived disability is not entitled to an instruction on reasonable accommodation. Weber, 186 F.3d at 915-917. Thus, in order to survive summary judgment on his claim of unlawful termination, Plaintiff must present evidence that he was qualified to perform his job as a mechanic on the night shift without reasonable accommodation.
Upon review of the record, the Court finds Plaintiff fails to present such evidence. Specifically, Plaintiff never contends he was capable of performing the essential functions of the position of night shift mechanic; rather, Plaintiff asserts that, "he could have readily performed his job of mechanic if, as his doctor requested, Defendant had reassigned him from the night shift to the day shift to accommodate the vision problems he experienced in one eye at night because of his MS." (Plaintiffs Memo in Opp., P. 8 (emphasis added)). See also Plaintiffs Facts, P. 7 (emphasis in original) ("Mr. Bishop is otherwise qualified to perform his job as mechanic with the accommodation of working the day shift."); Plaintiffs Exh. 1, Declaration of Craig Bishop, ¶¶ 34-38, 39 (emphasis added) ("I would have been concerned about fatigue if I had to do a number of tire jobs, one after the other, on the same shift. However, given the relatively small number of tire jobs a mechanic on the day shift might be required to do (because there was a full time tire specialist) and the relatively small amount of performing a tire job that actually involved supporting any portion of the weight of the tire with my body, I believe I could handle the tire jobs to which I might have been assigned on the day shift at Nu-Way without becoming excessively fatigued."); First Amended Compl., ¶¶ 10, 12-13; Defendant's Exh. M, Plaintiffs Grievance; Defendant's Appendix 4, Plaintiffs Dep., PP. 79-80; Defendant's Appendix 5, Plaintiffs Dep., PP. 6-9. Further, Plaintiffs treating neurologist consistently required that Plaintiff be assigned to work during daylight hours. (Defendant's Exh. X; see also Plaintiffs Exh. 3, August 20, 2004 Declaration of Ahmed H. Jafri, M.D., ¶ 14 (emphasis added) ("It was my opinion that Mr. Bishop should be able to execute the tasks demanded by his work, as they were explained to me by Mr. Bishop as long as he was working the day shift ...")). In light of the above, the Court finds Plaintiff fails to present a genuine issue of material fact with respect to element two of his prima facie case, i.e., whether he was qualified to perform the essential functions of his job without a reasonable accommodation.[6] Defendant's Motion for Summary Judgment on Count III of Plaintiff's First Amended Complaint will therefore be granted.[7]

*1016 C. Counts II and TV

In Count II of his First Amended Complaint, Plaintiff alleges Defendant's failure to make reasonable accommodations constituted unlawful discrimination within the meaning of the MHRA. (First Amended Compl., ¶ 26).In Count IV of his First Amended Complaint, Plaintiff alleges Defendant's termination of Plaintiffs employment constituted unlawful discrimination within the meaning of the MHRA. (First Amended Compl., ¶ 30). 28 U.S.C. § 1367 provides in relevant part as follows:
(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....
(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if (1) the claim raises a novel or complex issue of State law, ... (3) the district court has dismissed all claims over which it has original jurisdiction;....
28 U.S.C. § 1367(a) & (c).
The Eighth Circuit has held that district courts have "broad discretion" in deciding whether to exercise pendent jurisdiction over state law claims. Willman v. Heartland Hospital East, 34 F.3d 605, 613 (8th Cir.1994), cert. denied, 514 U.S. 1018, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995); see also Innovative Home Health Care, Inc. v. P.T.-O.T. Assoc. of the Black Hills, 141 F.3d 1284, 1287-88 (8th Cir. 1998). Upon consideration, this Court will exercise its discretion under 28 U.S.C. § 1367(c)(1)[8] and (3), and dismiss the claims in Counts II and IV of Plaintiff's First Amended Complaint without prejudice.

CONCLUSION
Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment and Request for Fees and Costs Pursuant to 42 U.S.C. § 12205 (Doc. No. 44) is GRANTED in part, and Counts I and III of Plaintiffs First Amended Complaint are DISMISSED with prejudice.
IT IS FURTHER ORDERED that Counts II and IV of Plaintiffs First Amended Complaint (Doc. No. 24) are DISMISSED without prejudice.
IT IS FURTHER ORDERED that Defendant's Request for Fees and Costs Pursuant to 42 U.S.C. § 12205 (Doc. No. 44) is DENIED.
IT IS FURTHER ORDERED that Plaintiffs Motion to Quash Subpoena (Doc. No. 58) is DENIED without prejudice.
An appropriate Judgment will accompany this Memorandum and Order.

JUDGMENT
In accordance with the Memorandum and Order entered this day and incorporated herein,
*1017 IT IS HEREBY ORDERED, AJUDGED and DECREED that Defendant's Motion for Summary Judgment and Requests for Fees and Costs Pursuant to 42 U.S.C. § 12205 is GRANTED in part, and Counts I and III of Plaintiffs First Amended Complaint are DISMISSED with prejudice.
IT IS FURTHER ORDERED that Counts II and IV of Plaintiffs First Amended Complaint are DISMISSED without prejudice.
NOTES
[1] Dr. Jafri's letter states in relevant part as follows:

TO WHOM IT MAY CONCERN Re: CRAIG BISHOP
The above patient is under my care. He suffers from multiple sclerosis. His condition has resulted in impaired vision in his right eye. For this reason, it is requested that he be permitted to work during daylight hours, i.e., the morning shift. Additionally, his neurologic illness limits him from strenuous work as this will result in decompensation of his MS. As such, he has a 25 pound weight limitation. Any questions in this regard should be addressed to my attention.
(Defendant's Exh. X). The parties dispute both the meaning of the term "strenuous work," and the comprehensiveness of the 25 pound weight restriction. (See Defendant's Facts, ¶ 112; Plaintiff's Exh. 3,¶¶ 9-10).
[2] In his First Amended Complaint, Plaintiff alleges Defendant terminated his employment on the basis of Plaintiff's actual disability, his record of disability, and/or Defendant's perception of Plaintiff as a person with a disability. (First Amended Compl., ¶¶ 16-18). In his Memorandum in Opposition, however, Plaintiff abandons his claims of discrimination based on "actual disability" and "record of disability." (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memo in Opp."), P. 3 n. 2 ("Mr. Bishop is pursuing an `as regarded' Claim in this case; he is not pursuing an `actual disability' or `record of disability' claim.")). The Court therefore limits its discussion to Plaintiff's "perceived as disabled" claim of discrimination.
[3] In an Order entered March 16, 2004, the Court granted summary judgment to Plaintiff on his claim for equitable rescission. (Doc. No. 37).
[4] Thus, read in conjunction with subsection (A), subsection (C) prescribes that a person is disabled under the ADA if that person is "regarded as having" a physical or mental impairment that substantially limits one or more major life activity. Woolen v. Farmland Foods, 58 F.3d 382, 385 (8th Cir. 1995), citing 42 U.S.C. § 12102(2)(c). "The limiting adjectives 'substantially' and `major' indicate that the perceived `impairment must be a significant one.'" Id. (quoting Byrne v. Board of Educ, Sch. of"West Allis-West Milwaukee, 979 F.2d 560, 564 (7th Cir. 1992)).
[5] Upon consideration, the Court holds that because Defendant was not required to make reasonable accommodations for Plaintiff's perceived disability, it was not required to engage in the interactive process of determining such an accommodation either.
[6] The Court's above rulings that Plaintiff(a) has not entitled to a reasonable accommodation for his perceived disability, and (b) was incapable of performing his assigned position without such an accommodation, take this matter outside the ADA disability forum. The Court thus finds the parties' positions regarding Plaintiff's alleged ability to bump another employee from the day shift irrelevant to its decision; in other words, the question of whether Plaintiff's Grievance request for a shift transfer was wrongly denied falls outside this Court's jurisdiction under the ADA.
[7] In light of the above ruling, the Court need not address Defendant's other arguments in support of its Motion for Summary Judgment on Counts I and III of Plaintiff's First Amended Complaint. Further, upon careful review of the record and relevant case law, the Court finds that an award of fees and costs pursuant to 42 U.S.C. § 12205 is not appropriate at this time.
[8] The Court finds Plaintiff's claim that he was entitled to reasonable accommodation under the Missouri Human Rights Act for his perceived disability presents a complex or novel issue of State law, as, "Missouri, unlike the federal law, makes the question of reasonable accommodations a part of the test of whether a handicap exists." Umphries v. Jones, 804 S.W.2d 38, 41 (Mo.App.1991); see also Devor v. Blue Cross & Blue Shield of Kansas City, 943 S.W.2d 662, 666 (Mo.App.1997).